Perfecto Barrantes CABALCETA, et al., Plaintiffs–Appellants, Cross–Appellees,

v.

STANDARD FRUIT COMPANY, Standard Fruit & Steamship Company, Dole Fresh Fruit Company, Castle & Cooke, Inc., the Dow Chemical Company and Shell Oil Company, Defendants–Appellees, Cross–Appellants.

No. 87–5709.

United States Court of Appeals, Eleventh Circuit.

Sept. 28, 1989.

Charles S. Siegel, Brent M. Rosenthal, Dallas, Tex., Louis S. Robles, Miami, Fla., for plaintiffs-appellants, cross-appellees.

Henry Burnett, Miami, Fla., Burt Ballanfant, Houston, Tex., for Shell Oil Co.

Robert C. Zundel, Jr., James E. Wilber, Jonathan B. Fellows, Boca Raton, Fla., for Standard Fruit Co., Standard Fruit & S.S. Co., Dole Fresh Fruit Co., Castle & Cooke, Inc.

Edward T. O'Donnell, Miami, Fla., Gennaro A. Filice III, Oakland, Cal., Charles J. Kalil, Dow Chemical Co., Midland Mich., for Dow Chemical Co.

Before HATCHETT and CLARK, Circuit Judges, and FITZPATRICK [*], District Judge.

FITZPATRICK, District Judge:

This case presents a number of unique jurisdictional questions, one of first impression regarding the statutory interpretation of 28 U.S.C. § 1332(c), and one involving fraudulent joinder. Because of their colorful and necessary history, we will first look at not only the procedural background of this case but the legal progression of several suits which have been filed against various combinations of the present Defendants/Appellees/Cross–Appellants. This brief historical synopsis will show the lengths to which Plaintiffs and their attorneys have gone in their attempts to have these claims heard in the United States.

The court, however, must first address the preliminary matter of whether or not Plaintiffs/Appellants shall be allowed to supplement the record on appeal with the Affidavit of Professor Hans Baade and the Costa Rican Juridical Identity Certificate No. 3010055925 of Defendant Standard

---

[*] Honorable Duross Fitzpatrick, U.S. District Judge for the Middle District of Georgia, sitting by designation.

Fruit Company. Plaintiffs maintain that this additional material addresses certain political arguments raised by Defendants for the first time on appeal. Defendants argue that the record is complete, that the information contained in the affidavit is irrelevant to the issues before the court, and that Professor Baade has not been qualified as an expert.

■ The question of subject matter jurisdiction can be raised by any party, or by the court itself, at any point of a proceeding. *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir.1984); *see also Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir.1983). This court's inherent equitable powers allow it to supplement the record with information not reviewed by the district, though this power is not often exercised. *Dickerson v. Alabama*, 667 F.2d 1364, 1367 (11th Cir.1982).

.... [T]his court has not articulated a general rule for when it is appropriate [to supplement a record on appeal]. Rather we have dealt with such requests on a case-by-case basis. We have refused to supplement the record when a party has filed supplemental material without requesting leave of this court or has appended material to an appellate brief without filing a motion to supplement.

*Ross v. Kemp*, 785 F.2d 1467, 1474–75 (11th Cir.1986) (footnote omitted). In *Ross* this court articulated several factors or questions which the court should consider when deciding whether or not to supplement the record: (1) whether "acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issue," *Id.;* (2) whether remand of the case would be contrary to the interests of justice and judicial economy; (3) whether the inherent judicial powers of the court in *habeas corpus* actions dictate supplementation. *Id.* These factors, however, are only guidelines, and we must evaluate all of the factors, issues and circumstances of each request on a case-by-case basis.

■ In the present appeal, an application of the *Ross* factors militates toward a denial of the Motion; however, the overall circumstances compel the court to allow supplementation. Plaintiffs did file the disputed supplemental material prior to moving for its acceptance by the court. Moreover, we are not convinced that the material will be dispositive of any of the issues before the court. As shown below, remand of this case will be necessary for re-evaluation of one issue, though not the issues on which the supplemental material is relevant. Despite these negative aspects of the request, the court is convinced that supplementation is appropriate. Since the court is considering the existence of subject matter jurisdiction, a consideration of all relevant information is necessary to make an informed and final decision. In the interest on judicial economy, supplementation is necessary for a final disposition of this issue and to avoid remand on all issues. In regards to all other motions carried with the case, the Court hereby denies those motions.

## BACKGROUND

Plaintiffs brought this suit in the Circuit Court in and for Dade County, Florida, against Defendants Standard Fruit Co. (Standard Fruit), Standard Fruit & Steamship Co. (Steamship), Dole Fresh Fruit Co. (Dole), Castle & Cooke, Inc. (Castle & Cooke), The Dow Chemical Co. (Dow), and Shell Oil Co. (Shell). Defendants filed a Joint Verified Removal Petition to the United States District Court for the Southern District of Florida, alleging complete diversity of citizenship and that no proper Defendant was a citizen of Florida for the purposes of the removal statutes, 28 U.S.C. §§ 1441, 1446. Once the case was removed, Standard Fruit filed motions to dismiss for lack of service of process, lack of personal jurisdiction and *forum non conveniens;* Dole filed a Motion to Dismiss for its fraudulent joinder; the remaining Defendants filed Motions to Dismiss for *forum non conveniens;* and Plaintiffs filed a Motion to Remand the case to state court. After oral argument the district court: (1) denied Plaintiffs' Motion to Remand; (2) granted Dole's fraudulent joinder Motion to Dismiss; (3) granted all *forum non conveniens* motions to dismiss; (4) denied as moot Standard Fruit's Motion to Dismiss

for lack of service of process and personal jurisdiction in light of the dismissal for *forum non conveniens.* *See* the district court's published opinion at *Barrantes Cabalceta v. Standard Fruit Co.,* 667 F.Supp. 833 (S.D.Fla.1987). Plaintiffs appeal the district court's denial of their Motion to Remand and the dismissal of their claims. Defendants have cross-appealed the denial as moot of Standard Fruit's motions to dismiss for lack of service of process and lack of personal jurisdiction.

The merits of this case concern Costa Rican residents, and their wives, who lived and worked on a banana plantation in Rio Frio, Costa Rica. Plaintiffs allege that they were exposed to pesticides containing the chemical dibromochloropropane (DBCP) while working on the plantation operated by Standard Fruit. Plaintiffs also allege that Defendants Dow and Shell manufactured and sold products containing DBCP. All of the Defendants, with the exception of Dole, the party dismissed by the district court as fraudulently joined, have agreed to submit to jurisdiction in Costa Rica where the claimed injuries allegedly occurred and where the vast majority of witnesses live. Plaintiffs, however, have struggled for several years to have their claims litigated in a state court in the United States. Certain of the Plaintiffs filed claims in *Sibaja v. Dow Chemical Co.,* 757 F.2d 1215 (11th Cir.), *cert. denied,* 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985). The *Sibaja* case, like the present action, originated in Florida state court, was removed to federal district court, and was eventually dismissed on *forum non conveniens* grounds by this court. The case of *Aguilar v. Dow Chemical Co.,* No. 86–4753 JGD (C.D.Cal.1986) was also removed to federal court and subsequently dismissed for *forum non conveniens.* A third case, *Alfaro v. Dow Chemical Co.,* 751 S.W.2d 208 (Tex.Ct.App. March 24, 1989), was originally dismissed by the Texas trial court on *forum non conveniens* grounds, but was recently reversed and remanded by the Texas Court of Appeals which held that the plaintiffs there could maintain their personal injury actions in Texas state courts without the threat of *forum non conveniens* dismissal. Thus the present action is the fourth and most comprehensive attempt to obtain state court jurisdiction in the United States.

The issues before the court in this appeal are: (1) whether the district court properly exercised jurisdiction under 28 U.S.C. § 1332 in this action between alien Plaintiffs and a corporation incorporated by one of the United States but allegedly having its principal place of business outside the United States; (2) whether the district court properly determined that Dole was fraudulently joined as a Party/Defendant; (3) whether the district court should have dismissed Standard Fruit for lack of service of process and lack of jurisdiction over the person; and (4) whether the district court erred in finding that Standard Fruit's principal place of business was overseas rather than in California. Depending upon the outcome of our analysis in issues one and two above, we may not need to address the final two questions.

## I. SUBJECT MATTER JURISDICTION— DIVERSITY OF CITIZENSHIP

In order for an action to be properly removed from a state court, the district court must have been able to exercise original jurisdiction over the original claims. 28 U.S.C. § 1441(a). An additional caveat in diversity actions is that no properly joined and served defendant can be "a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). In the present case, the district court found that the removal of this action was proper as diversity of citizenship existed. A finding of diversity jurisdiction necessitated a dismissal of the named-Defendant Dole, an admitted Florida citizen, on the grounds of fraudulent joinder. *Barrantes Cabalceta,* 667 F.Supp. at 836. In finding that diversity of citizenship existed, the district court necessarily held that for the purposes of the diversity statute, 28 U.S.C. § 1332, the alienage of a domestically incorporated defendant did not destroy diversity of citizenship, even where the plaintiffs are all aliens. The only issues which the district court found relevant when considering whether removal was proper were the section 1441(b) issue of Standard Fruit's Flor-

ida citizenship and the question of Dole's fraudulent joinder. The issue now before this Court is whether, for the purposes of section 1332 diversity of citizenship, a domestically incorporated corporation can be deemed to have dual citizenship such as will defeat diversity when the corporation is sued by a citizen of a foreign state.[1]

Plaintiffs contend that because the district court found Standard Fruit's principal place of business to be in Latin America, then Standard Fruit is an alien for diversity jurisdiction purposes and its presence destroys diversity jurisdiction since all Plaintiffs are aliens. Plaintiffs assert that a literal reading of section 1332 defeats the statute's policy to protect non-resident defendants from the danger of local prejudice. *See, e.g., Pease v. Peck,* 59 U.S. (18 How.) 595, 15 L.Ed. 518 (1855); and, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiffs seek to have this court read section 1332 to provide for a corporation's citizenship in both the state of its incorporation and the state of its principal place of business— whether American or foreign. To fully understand this issue, we must look to the statute, its language, its history and its judicial prodigy.

■■ The relevant provisions of § 1332 provide:

**§ 1332 Diversity of citizenship; amount in controversy; costs**

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or different States.

. . . .

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . .

(d) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

28 U.S.C. § 1332. Very early in the judicial history of this country, the Supreme Court established the rule of complete diversity of citizenship in *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). This rule requires that all plaintiffs and all defendants must be of different citizenships and has been extended to suits brought by aliens. *Ed and Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.,* 506 F.2d 757 (5th Cir.1975).[2] Thus the presence of at least one alien on both sides of an action destroys diversity. *Id.; see also State Establishment for Agricultural Prod. Trading v. M/V Wesermunde,* 770 F.2d 987 (11th Cir.1985).

In 1958, because of perceived abuses of the diversity statute by corporations, and to reduce the heavy federal caseload, Congress amended § 1332 to include subsection (c), which created, for diversity purposes, corporate citizenships in both the State of the corporation's incorporation and the State of the corporation's principal place of business. Prior to 1958 a corporation, including alien corporations, were only deemed citizens of the states of their incorporation. *See Steamship Co. v. Tugman,* 106 U.S. (16 Otto) 188, 1 S.Ct. 58, 27 L.Ed. 87 (1882). The perceived corporate abuses of diversity jurisdiction concerned the use of the federal courts by local corporations

---

**1.** For the purposes of this analysis, the court will assume *arguendo* that the district court's determination that Standard Fruit's principal place of business is in Latin America was correct. Only if we find that a foreign principal place of business is significant for diversity jurisdiction purposes must we address the issue of determining Standard Fruit's principal place of business.

**2.** This Court adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981 in *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

which happened to have been incorporated in another State, for whatever reason, through removal of state court actions. Such use of diversity jurisdiction was never intended, as the original objective was to protect "out-of-State citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the Federal courts." S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad. News 3099, 3101–02. Congress felt that the new subsection (c) would alleviate some of these abuses.

After the 1958 amendment, several courts wrestled with the issue of whether section 1332(c) applied to alien corporations. In 1981 the former Fifth Circuit addressed the issue in *Jerguson v. Blue Dot Inv., Inc.*, 659 F.2d 31 (5th Cir., Unit B, October 13, 1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982).[3] In *Jerguson*, after reviewing the differing district court decisions, the Court held that "a foreign corporation is a citizen for diversity jurisdiction purposes of a state where it has its principal place of business." *Id.* at 35; *see also, Vareka Invs. N.V. v. American Inv. Properties, Inc.*, 724 F.2d 907 (11th Cir.), *cert. denied*, 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984). The present appeal concerns the extent of subsection (c)'s application to both domestic and foreign corporations.

As stated before, the issue presented by this appeal is whether, for diversity purposes, a domestically incorporated defendant corporation can have a foreign principal place of business such that would defeat diversity jurisdiction against an alien plaintiff. The question presented here is one of first impression. So far as we have been able to discern, this issue has been squarely addressed only once by a federal court, that being a district in the Southern District of New York in 1966 in the case of *Willems v. Barclays Bank D.C.O.*, 263 F.Supp. 774 (S.D.N.Y.1966). In *Willems* the district court was faced with a situation where one of the plaintiffs' principal place of business was in British Guiana, though it was a Delaware corporation, and the defendant was a British corporation. Defendant contested jurisdiction, claiming that because aliens were present on both sides of the controversy, no diversity of citizenship existed. Defendant premised this argument on the assumption that a foreign principal place of business was relevant in determining diversity jurisdiction. The district court concluded, however, that section 1332(c) does not bestow "dual citizenship" on domestic corporations with their principal places of business outside the United States. The court based its decision on the distinction in section 1332 between "States" of the United States and "foreign states." We are now faced with whether or not the reasoning of the *Willems* court was sound and compelling or whether dicta in other, more recent decisions and other policy factors dictate a contrary decision.

Appellants attack *Willems* first by arguing that the case, *Eisenberg v. Commercial Union Assurance Co.*, 189 F.Supp. 500 (S.D.N.Y.1960), upon which it relies is no longer sound law and that this Court has specifically rejected *Eisenberg*. The *Eisenberg* case held that the principal place of business aspect of section 1332(c) did not apply to foreign corporations and that even if it did apply, it would do so only when the corporation has its world-wide principal place of business in a state of the United States. While this court, in *Jerguson, supra.*, rejected the holding of *Eisenberg*, we recognized and agreed with the portion of *Eisenberg* relied upon by the *Willems* court.

In arguing against application of section 1332(c) to alien corporations, plaintiff in this case places particular emphasis on the idea that Congress was referring only to American states and did not intend to include foreign countries in the word "State" in providing citizenship in any "State by which it has been incorporated." This is undoubtedly a correct reading of that part of the statute. Subsection (d) defines "States" to include

---

**3.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), this Court adopted as binding precedent the decisions of any Unit B panel of the Fifth Circuit issued after October 1, 1981.

"the Territories, the District of Columbia, and the Commonwealth of Puerto Rico" with no mention of foreign states. *Jerguson,* 659 F.2d at 35. Though the above-quoted passage was not a necessary portion of the holding in *Jerguson,* we recognize its significance to the present controversy.

▉ When a court interprets the meaning of a statute, it must look first to the plain language of the statute itself. *Railroad Concrete Crosstie Corp. v. Railroad Retirement Bd.,* 709 F.2d 1404, 1407 (11th Cir.1983). If the statute is in any way ambiguous, then the court must consider the statute's legislative history. *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *see also Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976) (legislative history considered even though statutory language appeared unambiguous on its face). Section 1332 in its entirety maintains a distinction between the capital "S" when referring to States of the United States and the lowercase "s" when referring to a foreign state. Subsection (c), which is at issue here, creates citizenship in two places for a corporation, one in the "State" of its incorporation and the second in the "State" where its principal place of business is located. As set forth in subsection (d), the "States" are the fifty United States, the District of Columbia, and Puerto Rico. Throughout Title 28 foreign states are referred to by use of the small case "s." [4] Thus a strict interpretation of subsection (c) mandates the finding that, for the purposes of diversity jurisdiction, a corporation's principal place of business outside the United States, the District of Columbia, and Puerto Rico will not defeat diversity of citizenship when an alien is part of the opposing side.

Though we find that the language of the statute is clear and unambiguous, we will also look to the legislative intent, if any, to determine if Congress may have meant something other than what the statutory language indicates. The legislative history of section 1332 is silent on the questions of foreign principal places of business and the capital "S"/lowercase "s" distinction. Congress apparently did not consider either of these issues; however, as we recognized in *Jerguson,*

> Congress was endeavoring to define in which states *in the United States* a corporation would be deemed a citizen for purposes of diversity jurisdiction.

*Jerguson,* 659 F.2d at 35 (emphasis in original). We cannot fathom that Congress could have ever intended to strip a domestic corporation of its citizenship for diversity jurisdiction, or any other, purposes.

Plaintiff has set forth several arguments and cases to suggest that Standard Fruit's foreign principal place of business defeats diversity jurisdiction. In *Southeast Guar. Trust Co., Ltd. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001 (N.D.Ill.1973), the district court was faced with the same question addressed by the *Jerguson* decision, i.e., whether section 1332(c) applies to foreign corporations, and, just as the court in *Jerguson* did, concluded that the subsection does apply. The district court in *Southeast Guar. Trust,* however, also recognized that

> Obviously Congress would only use the word State with a capital S, since if a corporation's principal place of business was a foreign state it would have no effect whatsoever on its citizenship for diversity purposes in the courts of the United States.

*Southeast Guar. Trust,* 358 F.Supp. at 1007. Thus *Southeast Guar. Trust* is not

---

**4.** The Court also notes that in the recent amendments to Title 28, Congress maintained the capital "S"/small case "s" distinction found in the 1958 amendment. Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702 (1988). Moreover, the Court is aware that, despite its continued proposal, Congress has declined for twenty years to adopt a proposal of the American Law Institute which would include foreign states in the provisions of section 1332(c):

> A corporation shall be deemed a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.

American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* (1969). This proposed amendment recognizes that as the section now reads, it does not contemplate foreign principal places of business.

in conflict with our decision here, but supports it even though the issues are different.

Next, Plaintiffs argue that the case of *Steinbock–Sinclair v. Amoco Int'l Oil Co.*, 401 F.Supp. 19 (N.D.Ill.1975), is directly on point, is a more recent decision than *Willems* and is in direct opposition to *Willems*. In *Steinbock–Sinclair* an Illinois resident brought suit against a multinational corporation, which had been incorporated in Delaware. Plaintiffs contend that *Steinbock–Sinclair* stands for the proposition that a domestic corporation may have a foreign principal place of business for diversity jurisdiction purposes. The stated issue before the district court in *Steinbock–Sinclair*, however, was "whether or not the defendant has its principal place of business in Illinois." 401 F.Supp. at 26. The *Steinbock–Sinclair* court went no further in its holding than to decide that the defendant's principal place of business was not in Illinois, thus finding that it had jurisdiction. The only statement in *Steinbock–Sinclair* which we can find to truly suggest what Plaintiffs argue is where the court holds that in determining the principal place of business of a multinational corporation the operations outside the United States should *not be disregarded* in determining diversity of citizenship. *Id.* at 24. This statement is not contrary to the law in this Circuit, and under our holding here, the inquiry in *Steinbock–Sinclair* is relevant but does not dictate a contrary holding.

In *Vareka Inv., N.V. v. American Inv. Properties, Inc.*, *supra*, this Court stated that "[u]nder 28 U.S.C.A. § 1332(c), a foreign corporation is deemed to be a citizen of the state in which it has its principal place of business." 724 F.2d at 909 (footnote omitted). Plaintiffs take this Court's use of the lowercase "s" in the above quotation to mean that the issue now on appeal is settled. The *Vareka* court was faced with reviewing whether the district court's finding that defendant Vareka's principal place of business was in Ecuador was clearly erroneous. Since all plaintiffs in *Vareka* were Florida citizens, the district court could exercise diversity jurisdiction so long as no defendants were residents of Florida. Defendant Vareka's alienage would not de-

feat jurisdiction. The *Vareka* Court cited *Jerguson* for the above-quoted proposition, and, as shown earlier, *Jerguson* supports the finding here. Vareka was incorporated in the Netherlands–Antilles and had its principal place of business in Ecuador. The finding of a foreign principal place of business did not create the dilemma before this court. The *Vareka* Court did not address the issue of dual citizenship, and we will not take the simple use of a lowercase "s" in the above-related quote to be dispositive of the present controversy. *Vareka* is not controlling precedent for the issue presently on appeal.

Plaintiffs' final argument is based primarily upon the affidavit of Professor Hans Baade and would require this court to exceed the issue of dual citizenship and completely strip Standard Fruit of its United States citizenship. Plaintiffs argue that Standard Fruit has become so completely assimilated into the corporate law and community of Costa Rica that it has become a juridical entity under that law such that its actions have renounced the benefits of the law of the United States. We cannot agree with this reasoning. Standard Fruit was incorporated in Delaware and it pays taxes, and most of its corporate officers are in the United States. To operate in Costa Rica, Standard Fruit was required to register as a "juridical entity," i.e., to submit to the laws of Costa Rica and to appoint a general agent in the country. Affidavit of Professor Hans Baade. Plaintiffs would have us segregate the Costa Rican branch of Standard Fruit as a distinct legal organization and determine its separate status under section 1332(c). The creation of corporate entities out of existing corporations is not a judicial role in our court system; it is a legislative duty. The case cited by Plaintiffs in support of this proposition, *Puerto Rico v. Russell and Co.*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933), concerned an entity organized under the laws of Puerto Rico. The Supreme Court was considering whether or not, for diversity purposes, the organization was "incorporated" under the laws of Puerto Rico. The Court was not faced with a situation where it would have to carve out a separate branch of an exist-

ing corporation which has been incorporated in the United States to create a second "corporation" for the sole purpose of establishing juridical identity. This Court does not have the power to do what Plaintiffs suggest.

In determining a corporation's principal place of business, a district court must, admittedly, consider all of the corporation's operations, both domestic and international. The only addition which our holding here makes is that if, upon inquiry, the court determines that a domestic corporation's world-wide principal place of business is not in one of the United States, the District of Columbia, or Puerto Rico, 28 U.S.C. § 1332(d), then the foreign principal place of business cannot be considered for diversity jurisdiction purposes. We are convinced that Congress has never intended to strip a domestic corporation of its citizenship for any purpose, nor has Congress intended to create a situation of dual citizenship and punish a domestic corporation which operates on an international basis. To the contrary, Congress has most often encouraged world-wide trade which strengthens the financial stability of the corporation, the foreign country and the United States. The clear statutory language of section 1332, together with the case law which has developed since the 1958 amendment, dictates our holding. We therefore find that the district court was correct in finding that Standard Fruit's possible Latin American principal place of business would not destroy diversity jurisdiction against alien Plaintiffs, and AFFIRM the court on this issue.

## II. FRAUDULENT JOINDER

As stated earlier, in order for removal under section 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Defendant Dole is a citizen of Florida, where this action originated. The district court, however, found that Defendant Dole had been fraudulently joined by Plaintiffs and accordingly dismissed Dole from the case and exercised diversity jurisdiction over the remaining parties. In determining that Dole had been fraudulently

joined, the district court found "no possibility" that Plaintiffs would be able to establish a "colorable" cause of action against Dole under Florida law in state court. *Barrantes Cabalceta*, 667 F.Supp. at 836–37. For the reasons set forth below, we find that the case must be remanded for further determination by the district court under Costa Rican law.

The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983). The test for determining whether or not a defendant has been fraudulently joined is twofold: (1) look to see whether there is no possibility the plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court. *Insinga v. LaBella*, 845 F.2d 249, 254 (11th Cir.1988). These determinations should be made based upon the plaintiff's pleadings at the time of removal. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed. 334 (1939). In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts. *Coker*, 709 F.2d at 1440.

The district court in the present action held that under Florida law, Plaintiffs could not possibly maintain a cause of action against Defendant Dole on a single entity or alter ego theory as argued by Plaintiffs at the district court level as well as here. *Barrantes Cabalceta*, 667 F.Supp. at 837. Plaintiffs concede that Dole was not incorporated until 1985, several years after the events alleged in the Complaint. Plaintiffs contend, however, that because the individuals who supposedly committed the wrongful acts against them now work for Dole and have worked for the same general business entity at all times relevant to the Complaint, a cause of action under a single entity or alter ego theory may be maintained against Dole under *Dania Jai–Alai Palace, Inc. v. Sykes*,

450 So.2d 1114 (Fla.1984). The district court found first that Plaintiffs' Complaint was devoid of any legal or factual allegations of the alter ego theory. The district further held that even assuming that Plaintiffs need not plead the specific facts or legal theory, no alter ego cause of action could be maintained because Dole was not in existence at the time of the alleged injuries and the simple procurement of services by Standard Fruit from Dole did not justify a finding of a single entity. *Barrantes Cabalceta*, 667 F.Supp. at 836. We agree.

The *Dania Jai–Alai Palace* case contemplates that the various entities sought to be identified as one be operating simultaneous. Thus, even assuming that Dole could now be considered the alter ego of Standard Fruit, the *Dania Jai–Alai Palace* case does not suggest that Dole could be liable for any wrongs of Standard Fruit which took place prior to its incorporation. The Florida court placed much emphasis on the fact that the three companies involved in *Dania Jai–Alai Palace* held themselves out to the public as a single entity. The Florida single entity theory of recovery requires an element of simultaneity which is not present in this action.

Plaintiffs also argue that the district court's order contains a fundamental inconsistency in that the court evaluated the fraudulent joinder issue under Florida law and later held, in dismissing the case on *forum non conveniens* grounds, that the cause of action would be governed by Costa Rican law. This inconsistency requires a reversal and remand of this case on the issue of fraudulent joinder. A review of Plaintiffs' pleadings at the time of removal does not indicate that they were definitely proceeding against Dole under Florida law. *See Pullman, supra.* Because the district court held that Costa Rican law would control the merits of

Plaintiffs' claims, then the allegations of the Complaint must be evaluated under Costa Rican law as to Defendant Dole. The district court apparently placed the burden of establishing a "colorable" cause of action on Plaintiffs. The burden, however, is on Defendants to show that the allegations of the complaint state no possible cause of action against defendant Dole. *Coker*, 709 F.2d at 1440. Defendants, however, need only show that Plaintiffs have no possible cause of action in Costa Rica *under the allegations of the Plaintiffs' pleadings at the time of removal.* Accordingly, we REVERSE the district court on the question of fraudulent joinder and REMAND for further proceedings consistent with this opinion.

## CONCLUSION

Because of our affirmance of the district court's rulings on the section 1332(c) issue and Standard Fruit we need not address the remaining issues presented by Defendants/Cross–Appellants at this time.[5] If the district court finds that Dole was fraudulently joined under Costa Rican law, then the court would have jurisdiction, and its dismissal of the remaining Defendants on the grounds of *forum non conveniens* would be appropriate. If the district court determines that Dole was not fraudulently joined, then removal would have been improper, and the court would necessarily have to remand the case to Florida state court.

AFFIRMED in part, and REVERSED and REMANDED in part.

---

**5.** Defendant's cross-appealed the district court dismissal as moot of Standard Fruit's objection to personal jurisdiction and service of process,

and the district court's finding that Standard Fruit's principal place of business is outside of the United States.