**HOWARD GRIGGS TRUCKING, INC. and Howard Griggs, Plaintiffs,**

v.

**AMERICAN CENTRAL INSURANCE CO., Continental Loss Adjusting Services, Inc., Palomar Insurance Corp. and Hank Strother, Defendants.**

Civ. A. No. 95–D–348–E.

United States District Court, M.D. Alabama, Eastern Division.

June 9, 1995.

■

---

Robert S. Thompson, Tuskegee, AL, for plaintiffs.

Phillip E. Adams, Opelika, AL, for American Central Ins. Co.

Ernestine S. Sapp, Fray D. Gray, Tuskegee, AL, for Continental Loss.

Philip S. Gidiere, Jr., Jack B. Hinton, Jr., Montgomery, AL, for Palomar Ins. Corp.

Philip S. Gidiere, Jr., Jack B. Hinton, Jr., Montgomery, AL, for Hank Strother.

*MEMORANDUM OPINION AND ORDER*

De MENT, District Judge.

Before the court is the plaintiffs' motion filed April 7, 1995 to remand this action to the Circuit Court of Macon County, Alabama, from which the defendants removed the action. Defendants American Central Insurance Co. and Continental Loss Adjusting Services, Inc. filed briefs on May 1, 1995, opposing the motion to remand on the theory that the plaintiffs joined two resident defendants as a fraudulent device to prevent removal. The plaintiffs filed a reply brief on May 8, 1995.

Also before the court is defendant Continental Loss Adjusting Services, Inc.'s motion filed April 18, 1995, petitioning the court to reconsider its order granting the plaintiffs' April 11, 1995 motion to amend the complaint. For the reasons set forth herein, the plaintiffs' motion to remand is due to be granted, as is defendant Continental Loss Adjusting Services, Inc.'s motion for reconsideration.

## I. PROCEDURAL FACTS AND HISTORY

On March 13, 1995, defendant American Central Insurance Co. (hereafter "American Central") filed a notice of removal of this action to the United States District Court for the Middle District of Alabama.[1] All defendants have consented to the petition for removal,[2] which is predicated on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.[3]

Except for the presence of defendants Palomar Insurance Corp. (hereafter "Palomar") and Hank Strother (hereafter "Strother"), an agent and employee of Palomar, complete diversity between the opposing parties would exist.[4] American Central and Continental Loss assert that the plaintiffs joined Palomar and Strother as "straw" parties to defeat removal of this action to federal court and that facts supporting the fraudulent joinder theory first surfaced at plaintiff Howard

---

1. While not required by the removal statutes, defendant Continental Loss Adjusting Services, Inc. (hereafter "Continental Loss") filed a separate removal petition on March 15, 1995.

2. The complaint filed in the circuit court also lists as defendants several fictitious parties, the identity of which are not yet known to the plaintiffs. For purposes of removal, however, the court does not consider the citizenship of fictitious defendants in assessing complete diversity. *See* 28 U.S.C. § 1441(a).

3. Section 1441 states in part that "... any civil action brought in a State court of which district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending ..." 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a), a district court has original jurisdiction over all cases where citizens of different states are involved and the amount in controversy exceeds $50,000, exclusive of interest and costs.

4. American Central and Continental Loss are citizens of foreign states. The plaintiffs, as well as Palomar and Strother, are citizens of Alabama.

Griggs' (hereafter "Griggs") deposition taken on February 15, 1995.[5]

The facts underlying this dispute are as follows: Griggs is the president and owner of Howard Griggs Trucking Company, Inc. (hereafter "trucking company"), also a plaintiff in this action. In 1994, Griggs purchased a motor truck cargo policy (hereafter "policy"), which provided insurance coverage for damage to cargo transported in any of the trucking company's listed vehicles. Griggs procured the policy through Strother, an agent for Palomar, and America Central issued the policy, effective January 9, 1994 through January 9, 1995.

On February 8, 1994, while coverage was in full force and effect, an employee of the trucking company inadvertently steered a tractor-trailer truck off a highway in Geneva, Georgia. The truck rolled on its side damaging a cargo of cast iron water meter boxes.[6] Thereafter, American Central assigned Continental Loss to serve as the adjustor for the claim.

The catalyst for this lawsuit revolves around Griggs' claim for reimbursement of expenses totaling $3,929.41 for labor and equipment to remove debris from the accident site. American Central tendered a check for only one-third of the claim, asserting that the policy does not cover salvage expenses that inure to the benefit of the owner of the tractor-trailer. While the terms of the policy are silent as to adjustment of claims, American Central contends that the terms thereof do not impliedly obligate it "to reimburse the insured, or anyone else, for damages or expenses related to the insured's tractor or trailer in the event of a loss." American Central's Mem. Opp. to Pl.s' Mot. Remand at 2. Rather, American Central argues that it only has an obligation to "reimburse the insured for expenses related to salvage operation, insofar as those expenses relate to a covered cargo loss." *Id.*

Griggs, on the other hand, contends that coverage includes all costs related to cargo damage, including expenses for salvage operations. He further asserts that he purchased the policy and paid premiums with the expectation that he would receive full reimbursement (minus the deductible) up to the policy limit of $35,000. When inquiring as to payment of the claim, Griggs asserts that an agent of Continental Loss told him that because the " 'custom in the insurance industry is to allocate wrecker and salvage charges equally to the tractor, trailer and cargo as each benefitted from the salvage operation, ... there will be no additional payments forthcoming.' " Pl.s' Compl. at ¶ 15.

The statements by American Central and Continental Loss led Griggs to believe that the defendants, including Palomar and Strother, had failed to disclose and/or misrepresented to him that "cargo-related" claims submitted under the policy were subject to a two-thirds downward adjustment. Hence, on June 14, 1994, this action commenced in the Circuit Court of Macon County.

The complaint alleges that the failure to receive full reimbursement for the claim un-

---

5. Conflicting authority exists as to whether deposition testimony revives the thirty-day window within which to file a notice of removal. *See* 28 U.S.C. § 1446(b), which provides that if the "initial pleading is not removable," as here, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, ..." Because the plaintiffs have not urged remand on the basis of untimely removal, the issue is not before the court for consideration.

The court notes, however, that the Court of Appeals for the Eleventh Circuit has not resolved the question of whether a deposition constitutes "other paper" under § 1446(b), and the district courts in this circuit have reached different conclusions. Namely, in *Harrell v. Reynolds Metals Co.*, 599 F.Supp. 966, 968 (N.D.Ala.1985), removed on the basis of diversity, the court ruled that a deposition was not "other paper" and, thus, did not trigger a new right of removal. The court in *Brooks v. Solomon Co.*, 542 F.Supp. 1229 (N.D.Ala.1982), however, found that under § 1446(b), the right of removal is rekindled when facts declared at a deposition reveal that the asserted state law claims actually present a case arising under federal law. *Id.* 1230–31.

6. The water meter boxes were the property of Opelika Foundry. The actual damage to the water meter boxes totaled $1,658.93. Pursuant to the policy, American Central paid this amount to Opelika Foundry, a fact not disputed by the plaintiffs.

der the policy gives rise to several state causes of action, including fraud (Counts I, IV, V), breach of contract (Count II), malice (Count III) and bad faith refusal to pay (Count VI). An amendment to the complaint filed in the circuit court adds a conspiracy theory of liability against American Central and Continental Loss (Count VII), as well as a negligence claim against Continental Loss (Count VIII).[7]

After removal of this action, the plaintiffs filed a motion to amend the complaint to add counts of negligence and wanton misconduct against Palomar and Strother. The court granted the motion in a stamped order entered April 13, 1995.

## II. DISCUSSION

### A. Motion for Reconsideration

Continental Loss filed a motion on April 18, 1995, therein asking the court to reconsider its order granting the plaintiffs' motion to amend the complaint. In support thereof, Continental Loss asserts that in ruling on the motion to remand, the court may not consider pleadings filed after the date of the notice of removal.[8]

■ The court agrees with Continental Loss that the propriety of removal should be considered based upon the pleadings as of the date of removal.[9] *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989) (*citing Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939)). In other words, the court will confine its analysis to the fraud claims, which are the only claims asserted against Strother and Palomar as of the date of removal, and will not examine the negligence and wanton misconduct counts added in the April 13, 1995 amended complaint.

Because remand is proper in this action, discussed *infra*, the court, on reflection, deems it logical and appropriate for the Circuit Court of Macon County to rule on the motion to amend the complaint. According-

ly, the court will grant Continental Loss' motion for reconsideration and will vacate its April 13, 1995 order granting the plaintiffs' motion to amend the complaint.

### B. Fraudulent Joinder

#### 1. Standard of Review

■ The party asserting fraudulent joinder may succeed by showing (1) that the plaintiff fails to state a cause of action against the nondiverse defendant and that failure is obvious according to the settled rules of the state, *Parks v. New York Times*, 308 F.2d 474, 477 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964), or (2) that the plaintiff "has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court." *Cabalceta*, 883 F.2d at 1561 (citation omitted). As the defendants have not alleged fraud in the pleading of jurisdictional facts, the only issue is whether the plaintiffs have stated a possibility of liability under Alabama law for recovery against Palomar and Strother.

■ The defendants, as the removing parties, "bear[ ] the burden of proving that the joinder of the resident defendant[s] was fraudulent." *Cabalceta*, 883 F.2d at 1561 (*citing Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983)). This burden is a heavy one, because if a possibility exists that a state court would find that the complaint states a cause of action against any one of the resident defendants, the court must find that the joinder is proper and remand the case to the state court. *Coker*, 709 F.2d at 1440 (citing *Parks*, 308 F.2d at 477–78). Finally, the court must construe in favor of the plaintiffs all factual issues and substantive law. *Coker*, 709 F.2d at 1440 (citation omitted).

#### 2. Sham Affidavit

■ As a preliminary matter, the court must address American Central's argument

---

7. The amended complaint also adds Howard Griggs as a plaintiff in this action.

8. American Central sets forth the same argument in brief.

9. The one exception is discussed *infra*, footnote 10.

that in determining the propriety of removal, the court must discard the affidavit of Griggs as it contradicts previous deposition testimony.[10] In *Van T. Junkins & Associates v. United States Indus., Inc.*, 736 F.2d 656 (11th Cir.1984), the court held that in opposing a motion for summary judgment, a party cannot create a genuine issue of material fact by submitting "an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 657. Hence, a court properly may disregard such an affidavit as unreliable and a sham. *Id.* at 658. The court cannot envision any reason why the holding in *Junkins* should not equally apply when a court is faced with a fraudulent joinder claim, particularly since resolution of this issue necessitates a "summary judgment-like procedure." *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990) *(cited in Lane v. Champion Int'l Corp.*, 827 F.Supp. 701, 707 (S.D.Ala. 1993)).

■ In support of its argument, American Central points to Griggs' deposition testimony, wherein Griggs responded in the negative to a series of inquiries as to whether he thought Strother had ever "lied" to him, "defrauded" him, "mistreated" him or "cheated" him. Griggs' Dep. at 198. Griggs also testified that he still conducts business with Strother and that Strother "went out of the way" to assist him with reimbursement of the claim at issue. *Id.* at 197.

In a post-deposition affidavit filed in support of the plaintiffs' motion to remand, however, Griggs states that Strother and Palomar failed to inform him of "everything [he] needed to know about the policy" and that he would not have purchased the policy had Strother informed him that a claim for cargo salvage expenses would require a two-thirds

downward adjustment. Griggs Aff. at 1. In addition, Griggs asserts that Strother "messed up" by not disclosing this fact to him. *Id.*

At first glance, it appears that the inconsistencies between the deposition testimony and affidavit are so blatant and irreconcilable as to warrant the exclusion of the affidavit. After a closer examination, however, the court finds that the affidavit merely *restates* Griggs' previous deposition testimony and that the real inconsistencies, if any, lie within the deposition itself. Namely, the court is referring to the following deposition testimony:

Q. Well, what I'm trying to find out is— ... Do you contend that [Strother] was withholding information that he knew from you?

A. *If he knew that it was supposed to have been cut a third, he lied to me.*

Griggs' Dep. at 210 (emphasis added).

The gist of the Griggs' deposition testimony appears to be that while Griggs did not at that time believe Strother failed to disclose pertinent information relating to adjustment of claims, if that were the case, Griggs would hold him accountable. The affidavit adds *nothing new to these statements made during the deposition.*[11]

In sum, the court finds that any confusion or contradiction manifests itself, if at all, in the deposition and that the affidavit merely recites that portion of the deposition where Griggs testifies that if Strother withheld information, he "lied." Hence, the court finds that any variances in testimony relate to the credibility and weight of the evidence, which is a question of fact for the trier of fact. Accordingly, the court will not usurp the jury's function by resolving issues of credibil-

---

10. Previously, Continental Loss filed a motion to strike the affidavit of Griggs. As grounds for that motion, Continental Loss asserted that in ruling on the plaintiffs' motion to remand, the court may only examine the record as it existed on the date the notice of removal was filed. The court denied the motion: When a removing defendant claims that a nondiverse defendant has been fraudulently joined to preclude federal subject matter jurisdiction, the parties may submit, and the court may consider, affidavits and deposition

excerpts in support of and in opposition to a motion to remand. *Cabalceta,* 883 F.2d at 1561 *(citing Coker,* 709 F.2d at 1440).

11. The court does not deem crippling the fact that Griggs did not know whether Strother knew of the adjustment procedures—particularly since on the date of Griggs' deposition and filing of the affidavit, Strother's deposition had not been taken.

ity and will not disregard the affidavit as a sham.

### 3. Fraudulent Joinder Analysis

The court now turns to the underlying issue in this case of whether the joinder of Palomar and Strother is a manipulative ploy by the plaintiffs to defeat diversity and, thus, thwart the legitimate jurisdiction of a federal court. American Central and Continental Loss assert that it is legally impossible for the plaintiffs to prevail against Strother and Palomar on claims for fraud alleging suppression of material facts, Ala.Code § 6–5–102 (1975), and misrepresentation of material facts, Ala.Code § 6–5–101 (1975).

█ Section 6–5–102 provides that "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from particular circumstances of the case." Ala.Code § 6–5–102 (1975). To succeed on a fraudulent suppression claim, the plaintiff must show: "(1) that the defendant suppressed a material fact, (2) that the defendant had a duty to communicate that material fact, either because of a confidential relationship between the parties, or because of the particular circumstances of the case, and 3) that the plaintiff suffered actual injury as a result of the suppression." *Boswell v. Liberty Nat. Life Ins. Co.*, 643 So.2d 580, 581 (Ala.1994) (citations omitted).

█ Here, Griggs contends that he was completely unaware that a cargo salvage claim was subject to any adjustment and that Strother concealed material facts within his knowledge by failing to disclose to Griggs that an adjustment would be calculated. American Central asserts that Palomar and Strother had no knowledge of its adjustment practices and, thus, could not have failed to disclose the same to Griggs. In stating the applicable law, American Central cites *McGarry v. Flournoy*, 624 So.2d 1359, 1362 (Ala.1993) for the proposition that a defendant must have actual knowledge of the fact alleged to be suppressed.

As a factual basis for its assertion, American Central has extracted certain portions of Strother's deposition, which it contends evidences that neither Palomar nor Strother possessed knowledge as to the particular method by which the claim would be adjusted:

Q. Would you agree that it is important that the person that is purchasing this type of insurance be forewarned that the cost of the salvage and cargo would be split into thirds?

.    .    .    .    .

A. As stated earlier, we don't get involved in the actual process of the settlement of the claim after it occurs. And this settlement was something that was offered after the claim had occurred. It was nothing we had available to discuss with him before the policy was purchased.

Q. So American Central ... didn't provide you any information as to how this particular cargo policy would be—how the claims portion would be settled in the event of salvage and cargo?

A. Of course, the policy would state the terms and exclusions. It doesn't necessarily always go into the detail of specifics of claims. I don't know how this particular policy addressed that specifically.

Strother's Dep. at 16–17.

While Strother does not know the exact method employed for adjusting a claim under this particular policy,[12] he does have knowledge that "[n]early every type of insurance policy uses some type of limitation on salvage [claims]." *Id.* at 25. In applying the appropriate standard of review, discussed *supra*, the court finds that there is a possibility that under Alabama law, Strother could be held liable for failing to disclose that a salvage claim would require an adjustment. In other words, a colorable basis exists that Strother's silence as to adjustment of claims in general lulled Griggs into purchasing the policy, which he would not have done had this fact been conveyed.

---

**12.** He even testified that sometimes adjustments for separate claims filed under the same policy are calculated differently.

Moreover, this is not a case where the terms of the policy unambiguously set out the method for adjusting claims or how a claim for salvage expenses would be adjusted. *See Levett v. Independent Life and Accident Ins. Co.*, 814 F.Supp. 1053, 1056 (M.D.Ala.1993) (DeMent, J.). In fact, the policy is silent in this regard.

Furthermore, the court finds that the facts alleged reveal a relationship between Griggs and Strother sufficient to raise an issue as to whether a duty to disclose exists based upon "... the relation of the parties, the value of the particular fact suppressed, the relative knowledge of the parties, and other circumstances." *Oxford Furn. Co. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1124 (11th Cir.1993) (citation omitted) (holding that the determination of whether a duty to disclose exists under § 6–5–102 generally is an issue for the jury).

For the foregoing reasons, the defendants have not persuaded the court that a possibility does not exist that the Circuit Court of Macon County would find that the plaintiffs cannot state a cause of action for fraudulent suppression against Strother and Palomar.[13] Accordingly, the plaintiffs' motion to remand is due to be granted.[14]

### C. Plaintiffs' Motion to award costs and attorney fees

■ The plaintiffs also seek an award of costs and attorney fees under 28 U.S.C. § 1447(c), which provides, in pertinent part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Whether or not to award costs or attorney fees is within the sole discretion of the trial court. *IMCO USA, Inc. v. Title Ins. Co. of Minnesota*, 729 F.Supp. 1322, 1324 (M.D.Fla.1990) (stating that "[t]o construe the statutory provision in any other manner would always result in the prevailing party who moved for remand being awarded fees and/or costs").

■ Here, the court declines to award costs and attorney fees when from aught that appears, the defendants in this action acted reasonably on the basis of the information available at the time of removal. Accordingly, the court finds that the plaintiffs' motion for costs and attorney fees incurred as a result of the motion to remand is due to be denied.

### III. CONCLUSION

For the foregoing reasons, the court finds that the plaintiffs have not fraudulently joined the nondiverse defendants for the sole purpose of defeating federal jurisdiction. Accordingly, it is

CONSIDERED and ORDERED that the plaintiffs' motion to remand be and the same is hereby GRANTED and that the above-styled cause be and the same is hereby REMANDED to the Circuit Court of Macon County, Alabama.

It is further CONSIDERED and ORDERED that defendant Continental Loss Adjusting Services, Inc.'s motion for reconsideration of the court's April 13, 1995 order granting the plaintiffs' motion to amend the complaint be and the same is hereby GRANTED and that the court's said April 13, 1995 order be and the same is hereby VACATED.

It is further CONSIDERED and ORDERED that the plaintiffs' motion for costs and attorney fees be and the same is hereby DENIED.

The clerk is DIRECTED to take the appropriate steps to effectuate said remand.

---

**13.** The court does not express an opinion as to whether the fraudulent suppression claim could withstand a motion for summary judgment or a motion for judgment as a matter of law.

**14.** In finding a possibility of liability, the court need not determine whether the plaintiffs can maintain an action against Strother and Palomar on a fraud claim alleging misrepresentation of a material fact.