# In the
# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 07-3138

MAS CAPITAL, INC.,

*Plaintiff-Appellant*,

*v.*

BIODELIVERY SCIENCES INTERNATIONAL, INC.,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:04-cv-0092-DFH-WGH—**David F. Hamilton**, *Chief Judge*.

———————————

ARGUED FEBRUARY 12, 2008—DECIDED MAY 1, 2008

———————————

Before EASTERBROOK, *Chief Judge*, and RIPPLE and ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. MAS Capital filed suit in a state court to collect what it says is due for services rendered to Biodelivery Sciences, which removed the proceeding to federal court under the diversity jurisdiction. The district court granted summary judgment for Biodelivery, ruling that the suit is barred by a release. 2006 U.S. Dist. LEXIS 60928 (S.D. Ind. Aug. 25, 2006). Before we can address that question, we must decide

whether the controversy is within the federal courts' subject-matter jurisdiction.

When removing the suit, Biodelivery alleged that it was incorporated in Delaware and had its principal place of business in New Jersey, while MAS Capital was both incorporated and had its principal place of business in Indiana. Evidence has since shown that the allegations about MAS Capital's citizenship were incorrect. When the notice of removal was filed (which is the time that matters, see *Gibson v. Bruce*, 108 U.S. 561 (1883)), MAS Capital was incorporated in Nevada and had its principal place of business in Taiwan. This led us to inquire whether 28 U.S.C. §1332 supplies jurisdiction, because if MAS Capital is treated as a citizen of both Nevada and Taiwan, neither §1332(a)(2) (which covers suits between "citizens of a State and citizens or subjects of a foreign state") nor §1332(a)(3) ("citizens of different States and in which citizens or subjects of a foreign state are additional parties") is a comfortable fit. Subsection (a)(2) doesn't work because MAS Capital has a domestic citizenship, and subsection (a)(3) because MAS Capital is not an "additional party".

This circuit has never considered how §1332 treats domestic corporations with principal places of business outside the United States. But the question has arisen in two other circuits, both of which hold that the foreign principal place of business does not count, so that jurisdiction is proper under §1332(a)(1) ("citizens of different States"). *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553 (11th Cir. 1989). These decisions rely on §1332(c)(1), which says that "a corporation shall be deemed to be a citizen of any State by which it has been

incorporated and of the State where it has its principal place of business". Both decisions understand "State" in this subsection to refer to one of the 50 states only, and not to foreign states; the result is that a corporation with its principal place of business abroad has only one citizenship.

Reading "State" in §1332(c)(1) to mean "state of the United States" is sensible, if not inevitable. Section 1332 uses the word "State" frequently, always in contexts that refer to a domestic state, while the statute consistently refers to a foreign nation as a "foreign state". The passages we have quoted from subsections (a)(1), (a)(2), and (a)(3) illustrate this usage; several other portions of §1332 use the same expressions. It would be possible, we suppose, to say that a domestic corporation that lacks a principal place of business in the United States is treated as a partnership or limited-liability company, because §1332(c)(1) insists that every "corporation" have two citizenships. Then we would need to know the citizenship of MAS Capital's equity owners. But it seems to us more compatible with the structure of §1332 to treat corporations as corporations, and then track down as many citizenships as each has, rather than to treat entities organized as corporations as if they were something else. See, e.g., *Moor v. County of Alameda*, 411 U.S. 693, 717–21 (1973); *Hoagland v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737 (7th Cir. 2004). We therefore agree with *Torres* and *Cabalceta*. Given §1332(c)(1), MAS Capital is a citizen of Nevada alone.

MAS Capital supplied Biodelivery with services designed to evade the requirements that the Securities Act of 1933 imposes on companies that go public. It incorporated a shell company, MAS Acquisition XXIII, that it represented had tradeable securities; then it arranged for

Biodelivery to merge with MAS Acquisition XXIII, which changed its name to Biodelivery Sciences International. Voilà! Stock in Biodelivery now can be bought and sold by the general public. No muss, no fuss, no registration statements, no prospectuses, no waiting periods—none of the expense, delay, and disclosure required by the securities laws. The SEC takes the position that this two-step, known as going public by the back door, which sounds too good to be true, is not lawful. It has commenced several administrative proceedings against MAS Capital and Aaron Tsai, its president and sole director. (Perhaps this is why Tsai has left the country.)

When the SEC got wind of the transaction involving Biodelivery, it asked for information about the role that Tsai and MAS Capital had played, and NASDAQ informed Biodelivery that it would not allow the stock to trade unless the firm were disentangled from Tsai—who for his services had issued 300,000 shares of stock in MAS Acquisition XXIII (and thus Biodelivery) to MAS Capital, plus options for another 100,000 to himself. Tsai agreed to sell the stock and options (which he did, receiving about $150,000) and release any claim to additional compensation. The release represents that "neither Aaron Tsai or MAS Capital Inc., either directly or indirectly, have any right or entitlement to any consideration or compensation from" Biodelivery. Tsai signed individually and as president of MAS Capital. Another clause in the release states that the promise "may be relied upon by [Biodelivery] and regulatory agencies with which [Biodelivery] is currently engaged, including, but not limited to NASDAQ, NASD, and SEC."

Nonetheless, Tsai has tried in this suit to collect additional compensation. When Biodelivery pleaded the release as a defense, MAS Capital replied that some fancy foot-

work had revived the claim. Contradicting what MAS Capital and Tsai had assured Biodelivery, NASDAQ, and the SEC, MAS Capital now insists that some of the services were performed not by MAS Capital, but by MAS Financial, Inc., another of Tsai's corporations. (Apparently he has a large stable of them.) MAS Financial did not sign the release, nor did Tsai sign in his capacity as its agent. So how can MAS Capital sue on a claim owned by MAS Financial? That's easy. It asserts that a merger between the two firms has occurred, and that MAS Capital is the surviving firm. Voilà! (again).

The district judge was not amused, and neither are we. Tsai and his corporations take the law, and their promises, entirely too lightly. Tsai himself performed the services; any claim that MAS Financial (and thus MAS Capital) may have is derivative of his endeavors, and he has released any claim. We need not go beyond the clause in the release pledging that Tsai will not receive any further benefit from Biodelivery "directly or indirectly". Any recovery by MAS Capital would provide an indirect benefit to Tsai, the corporation's beneficial owner. The district judge therefore acted rightly in granting summary judgment to Biodelivery.

We will send copies of this opinion to NASDAQ and the SEC so that they may judge for themselves, in their ongoing administrative proceedings, whether Tsai's promises are credible. We also direct MAS Capital to show cause within 14 days why we should not impose sanctions under Fed. R. App. P. 38 for this frivolous appeal.

AFFIRMED