James L. MASK and Mary E. Mask, Plaintiffs,

v.

CHRYSLER CORPORATION; and Roebuck Chrysler–Plymouth, Defendants.

and

Janis E. JOHNSON, Plaintiff,

v.

CHRYSLER CORPORATION, Carmichael Chrysler, Inc. and Gene Reeves Lincoln, Mercury, Dodge, Inc., Defendants.

Civ. A. Nos. 93–G–0559–S and 93–P–0564–W.

United States District Court, N.D. Alabama, S.D.

June 16, 1993.

Andrew J. Smithart, III, Pearson & Smithart, Tuscaloosa, AL, Lynn W. Jinks, III, Jinks Smithart & Jackson, Thomas B. Paulk, Union Springs, AL, for plaintiffs.

James Franklin Walsh, Timothy A. Palmer, Lange Simpson Robinson & Somerville, Birmingham, AL, for defendant Chrysler Corp.

John M. Galese, Galese & Moore, Timothy A. Palmer, Lange Simpson Robinson & Somerville, Birmingham, AL, for defendant Roebuck Chrysler–Plymouth.

## MEMORANDUM OPINION

GUIN, Senior District Judge.

The two cases presently before the court are among a series of cases filed against Chrysler Corporation [hereinafter Chrysler] and various individual dealerships that handled Chrysler products. Each case alleges "designed in" defects in Chrysler "M" body automobiles: Chrysler Fifth Avenue, Dodge Diplomat, and Plymouth Grand Fury. All of the cases were filed in state courts around the state. In the cases at bar Chrysler contends the dealerships were fraudulently joined as parties to defeat diversity and keep the cases out of federal court.

A history of the Chrysler cases shows that on March 12, 1993, the nondiverse dealership in *Adrian Lancaster v. Chrysler Corporation, et al.*, CV 91–790, filed in the Circuit Court of Tuscaloosa County, was dismissed on directed verdict.[1] The dismissal in *Lancaster* was consistent with the outcome in other cases filed against Chrysler dealerships. With the exception of one claim against the dealership under the Alabama Extended Manufacturer's Liability Doctrine in *Glover v. Chrysler Corporation, et al.*, CV 90–1275, filed in the Circuit Court of Tuscaloosa County,[2] all of the cases filed against the dealerships originally removed and remanded, which were not voluntarily dismissed, were dismissed as a matter of law.[3]

Similarly, on March 19, 1993, the plaintiff, in *Borders v. Chrysler Corp. et al.*, CV 91–237–D, filed in the Circuit Court of Autauga County, voluntarily dismissed the nondiverse dealership.

Chrysler has contended, as attested by the affidavit of John Martin Galese,[4] that plaintiffs' attorney, Andrew J. Smithart, III, has conceded, in cases in which Mr. Galese was involved as attorney, that the plaintiffs never had any colorable claim against the named dealerships and that the dealers were not their "targets." The plaintiffs did not blame the dealers for their problems. Based upon his experience in these cases, his knowledge of the facts, and the law in the case at bar, Mr. Galese opined "that the claims asserted against the dealer[s] are without legal foundation and do not state a colorable claim against the defendant dealerships."

By affidavit, Mr. Wilbur Colom[5] testified that by letters of October 26, 1989, and January

---

1. The trial judge determined that the dealership did not have knowledge of the fraud at the time of the sale of the automobile to Mr. Lancaster.

2. The *Glover* case was the only associated case against Chrysler and its dealerships in which a claim under the Alabama Extended Manufacturers Liability Doctrine was asserted and the only case in which a plaintiff asserted a claim for personal injury. Under the AEMLD doctrine, the seller is liable (subject to certain defenses), as is the manufacturer, on proof that the product sold was defective. *Glover*, therefore, presented a plausible claim against the seller not present in either of the two cases before the court.

3. The dealerships were dismissed as a matter of law in *Glover v. Chrysler Corporation, et al.*, CV 90–1275, in the Circuit Court of Tuscaloosa County; *Lancaster v. Chrysler Corporation, et al.*, CV 91–790, in the Circuit Court of Tuscaloosa County; and *Thomas v. Chrysler Corporation, et al.*, CV 91–117, in the Circuit Court of Autauga County. The dealerships were voluntarily dismissed by the plaintiffs when the cases settled in *Geer v. Chrysler Corporation, et al.*, CV 90–1276, in the Circuit Court of Tuscaloosa County; and *True v. Chrysler Corporation, et al.*, CV 90–93, in the Circuit Court of Hale County.

4. Mr. Galese appeared before this court when the motions to remand filed in the above-styled cases were heard. He has been involved in defending various automobile dealerships that have been joined as defendants with Chrysler in a series of suits, all brought by Andrew J. Smithart III, plaintiffs' attorney of record.

5. Mr. Colom was the attorney for Gil Carmichael, the previous owner of Carmichael Chrysler, Inc. and Capstone Chrysler, Plymouth, Inc.

ary 31, 1990, Mr. Smithart stated that neither he nor his client blamed the dealership for problems the Browns were experiencing with a Chrysler product and that he did not intend to pursue the claim against the dealer to judgment. In the January 31, 1990, letter addressed to both Mr. Colom and Mr. Galese, who represented the defendant dealerships in the *Geer, Glover, Floyd* and *Brown* cases, Mr. Andrew Smithart wrote the following:

> It is certainly my opinion and the opinion of my clients that the dealerships had absolutely nothing to do with the problems existing in the automobile.
>
> In fact, the evidence I intend to put forward at trial through the testimony of my clients and others, will show that the **totality** of the problems were due to the manufacturing process and not due to any failure on the part of the local dealerships. (Emphasis added).

> .    .    .    .    .

> I have no doubt that Chrysler Corporation is completely at fault with regard to the problems the Browns have experienced.

The instant cases were filed by James L. Mask and Mary E. Mask against Chrysler Corporation and Roebuck Chrysler–Plymouth, and by Janis E. Johnson against Chrysler Corporation and Carmichael Chrysler, Inc., and Gene Reeves Lincoln, Mercury, Dodge, Inc.

The record shows that the Masks sued the dealership, Roebuck Chrysler–Plymouth. They purchased their automobile January 23, 1988. Roebuck Chrysler–Plymouth Jeep Eagle, Inc.,[6] doing business under the trade name Roebuck Chrysler–Plymouth, was not incorporated until June 18, 1992. It did not begin conducting business until after that time. Prior to its incorporation, Car Center, Inc. had conducted business at the same location. Realizing that they had served the wrong party, the plaintiffs dismissed Roebuck Chrysler–Plymouth Jeep Eagle, Inc. on March 5, 1993, and amended their complaint to name Car Center, Inc. as the dealer defendant. The plaintiffs have not perfected service on Car Center, Inc.[7]

In Mr. Mask's deposition taken May 19, 1993, Mr. Mask testified he relied on the television advertisements made by Ricardo Montalban and Lee Iacocca in deciding to purchase the Chrysler Fifth Avenue. His only complaint with "Roebuck Chrysler–Plymouth" was that the dealership was unable to fix his automobile within four months after purchase. After that time Mr. Mask attempted the repairs himself or took the car elsewhere. Mr. Mask testified that most of the problems were with tires. He took the car to Adair Tire in Gardendale for repairs.

On or about March 12, 1993, at the time when the dealership in *Lancaster* was dismissed on directed verdict, Chrysler realized that the nondiverse dealerships in the above-styled cases were fraudulently joined. Pursuant to 28 U.S.C. § 1446(b),[8] within 30 days,[9] Chrysler removed the cases to federal court, contending that the dealers were fraudulently joined in the state court actions in an effort to defeat diversity. Accordingly, Chrysler contends the citizenship of the dealers can be ignored. Plaintiffs, however, con-

---

**6.** The plaintiffs served Roebuck Chrysler–Plymouth Jeep Eagle, Inc.

**7.** Counsel has advised the court that Car Center, Inc. is no longer doing business. Plaintiffs are still trying to determine who the incorporators were.

**8.** "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court

and is not required to be served on the defendant, whichever period is shorter. ·

"If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable...."

**9.** The court finds no merit to plaintiffs' argument that the removals were not timely filed. The statute allows removal within 30 days after first ascertaining that the case is one which is or has become removable.

tend the removal is wrongful because complete diversity does not exist.

In determining whether the dealerships have been fraudulently joined, the court must look to the law, stated by our circuit in the following manner:

[D]etermination of fraudulent joinder is to be based on whether there is a real intention on colorable grounds to procure a joint judgment.... [T]here must be some reasonable basis for believing that there is joint liability. The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous. And a joinder is fraudulent if the facts asserted with respect to the resident defendant are shown to be so clearly false as to demonstrate that no factual basis existed for any honest belief on the part of the plaintiff that there was joint liability.

.    .    .    .    .

The doctrine is stated as follows in Moore's Commentary on the United States Judicial Code, Par. 0.03(35), p. 234–236:

.    .    .    .    .

Whether the joinder is fraudulent or not is said to depend on whether the plaintiff really intended to obtain a judgment against both defendants.... The defendant may show bad faith in joinder by proving that the plaintiff stated the facts knowing them to be false, or with enough information within reach so that he should have known them to be false.

*Parks v. New York Times Company*, 308 F.2d 474, 477–78 (5th Cir.1962), *cert. denied, New York Times Co. v. Parks*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964).

More recently, the Eleventh Circuit, in *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989), set forth the following two-fold test for determining whether or not a defendant has been fraudulently joined:

(1) look to see whether there is no possibility the plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court. *Insinga v. LaBella*, 845 F.2d 249, 254 (11th Cir.1988).

*See also Charest v. Olan Corporation*, 542 F.Supp. 771 (N.D.Ala.1982).

■ In order to determine the propriety of the removal the federal court is not limited to the face of the plaintiff's complaint. It is entirely proper for the court to consider the outcome of related Alabama cases filed by the plaintiffs' attorney against Chrysler dealerships. The court may consider the facts disclosed on the record as a whole. *Villarreal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5th Cir.1976) (referring to 14 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3734, 1976). "A party may not fraudulently evade removal by drafting a complaint so that the true purpose of the law suit is artfully disguised. *Romick v. Bekins Van & Storage Co.*, 197 F.2d 369, 370 (5 Cir.1952), *citing Great Northern Ry. Co. v. Alexander*, 246 U.S. 276, 281, 38 S.Ct. 237, 239, 62 L.Ed. 713, 715 (1918)."

In *Marquette National Bank v. First National Bank of Omaha*, 422 F.Supp. 1346 (1976), the court noted that the characterization of the complaint is not controlling if there has been fraudulent joinder. The parties must be realigned according to their real interests, and a defendant fraudulently joined is to be disregarded in determining the existence of diversity. *Id.* at 1350 (citing 1A J. Moore, *Federal Practice* ¶ 0.161[2], at 210 (2d ed. 1974)). "Whether the joinder is fraudulent or not depends on whether the plaintiff really intended to obtain a judgment against the defendant whose joinder is alleged to be fraudulent." *Id.*

■ Considering the facts before the court in the *Mask* case, the court is of the opinion there is no legitimate claim against the dealer for the following reasons: (1) The affidavit of Mr. Galese and the affidavit of Mr. Colom establish the plaintiff's attorney never expected to collect from the dealers in the cases he filed; (2) Mr. Smithart's letter spe-

cifically states that "the totality of the problems were due to the manufacturing process;" (3) The history of the cases filed against Chrysler dealerships shows there is no possibility for the plaintiffs to establish a cause of action against the nondiverse defendants; (4) Other than the case brought under the Alabama Extended Manufacturers Liability Doctrine there is no case on record in which suit filed against a dealer has been successful; and (5) Mr. Mask's testimony itself establishes that there is no legitimate claim against Roebuck Chrysler–Plymouth.

The language of 28 U.S.C. § 1441(b) states the following:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and **served** as defendants is a citizen of the State in which such action is brought. (Emphasis added).

■ While the court is of the opinion that the *Mask* action was properly removed because of fraudulent joinder, it is also of the opinion that the case was properly removed because the dealer has not been served. The courts are divided over the issue of whether Section 1441(b) allows removal of a diversity action before the resident defendant is served. In *Alphonse v. Omni Hotels Management Corp.,* 757 F.Supp. 722, 724 (E.D.La.1991), the court said the following:

> Under 28 U.S.C. § 1441(b), the matter may be removed if the properly joined "and served" parties are citizens of different states. The mere naming of non-diverse defendants does not alone defeat diversity for removal purposes.... Where the plaintiff has acted in such a manner as to indicate no intention of proceeding against these nondiverse parties, the action may be removable.... However, if the parties are simply not yet served, their citizenship may be considered in establishing diversity for purposes of removal.

In *Wensil v. E.I. Dupont De Nemours and Co.,* 792 F.Supp. 447, at 449 (D.S.C.1992), the court concluded that "Section 1441(b) allows removal of diversity actions when none of the defendants properly joined and served is a resident of the state in which the action is filed." The court specifically held:

> In the absence of a clearly expressed legislative intent to the contrary, unambiguous statutory language must be given its plain meaning.... Section 1441(b) unambiguously states that diversity actions "shall be removable only if none of the parties in interest properly joined *and served* as defendants is a citizen of the State in which such action was brought." 28 U.S.C. § 1441(b) (emphasis added). The statute is clear. The presence of unserved resident defendants does not defeat removal where complete diversity exists. *See* Wagstaff, *Federal Civil Procedure Before Trial* ¶ 2.625 (5th Cir.Edition 1991).

792 F.Supp. at 448–49. *See also Windac Corp. v. Clarke,* 530 F.Supp. 812, 813 (D.Ne. 1982) ("When a defendant has not been 'served,' ... within the meaning of the statute, citizenship in the forum state does not defeat removal jurisdiction.") *But see Pecherski v. General Motors Corp.,* 636 F.2d 1156 (8th Cir.1981) (Failure to serve a defendant who would defeat diversity jurisdiction does not permit a court to ignore that defendant in determining the propriety of removal.); *Workman v. National Supaflu Systems, Inc.,* 676 F.Supp. 690 (D.S.C.1987) (The fact that a resident defendant has not been served does not justify removal by a non-resident.).

Noting that the plaintiffs have not yet perfected service on Car Center, Inc., the court holds alternatively that citizenship of Car Center, Inc. does not defeat removal jurisdiction. It is the opinion of this court that the unambiguous language of the statute should be construed exactly as written. Car Center, Inc. has not been "properly joined and served." It, therefore, cannot defeat removal jurisdiction.

■ Janis Johnson and her husband [10] wanted to purchase a new 1985 Chrysler Fifth Avenue. They originally approached

---

**10.** The Johnsons have since divorced.

Carmichael Chrysler, Inc.[11] to negotiate the sale. Carmichael did not have the color automobile the Johnsons wanted, but found one for them at Gene Reeves Lincoln, Mercury, Dodge, Inc. dealership in Jasper where the sale was completed. Janis Johnson has brought suit in her name against Chrysler and the dealerships of Carmichael Chrysler, Inc., and Gene Reeves Lincoln, Mercury, Dodge, Inc. The certificate of title and bill of sale, however, show that the subject automobile was purchased from Gene Reeves Lincoln, Mercury, Dodge, Inc. by plaintiff's former husband, Raymond E. Johnson.[12] Not being a party to the contract, Janis Johnson cannot maintain an action for revocation of acceptance (count one), breach of warranty (count two), or breach of contract (count five) against the resident defendants.

■ Nor does Mrs. Johnson have a cause of action for fraud against the dealerships under count three. Fraud is a personal tort and will only run to the individual who received a representation and was induced to rely thereon. *Gillion v. Alabama Forestry Association*, 597 So.2d 1315, 1321–22 (Ala. 1992). To be actionable by Mrs. Johnson, the fraud action must have been directed toward her. It was not. She did not receive title to the automobile until May 7, 1992, six and one-half years after the sale of the car. Since neither Mr. nor Mrs. Johnson purchased the automobile from Carmichael, Chrysler, Inc., neither can assert fraud counts against it.

The only remaining count against the dealerships is the count for negligent repair (count four). Mr. Gene Reeves has sworn by uncontroverted affidavit that his dealership performed no work on the Johnson vehicle during the two years preceding the filing of suit. His dealership has never worked on it while it was owned by Janis Johnson. The

Carmichael dealership has been out of business since 1987, and the plaintiff has made no claim against Tuscaloosa Chrysler Plymouth, the dealership occupying its former location. It is clear, therefore, that there is no viable claim for negligent repair against either named dealership under Alabama's two year statute of limitations. Ala.Code § 6–2–38 (1992 Supp.).

The court holds that the allegations against Gene Reeves Lincoln, Mercury, Dodge, Inc. and Carmichael Chrysler, Inc. are groundless. The allegations are no barrier to removal.

For the reasons set forth, this court holds that the motions to remand filed in the above-styled cases are due to be denied.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED.

---

11. Carmichael Chrysler, Inc. was purchased by Terry McGee in 1987. Thereafter, Mr. McGee's dealership, known as Tuscaloosa Chrysler Plymouth, Inc., operated from the same location. Carmichael Chrysler, Inc. terminated all motor vehicle sales and service business operations on September 12, 1987.

12. Mr. Reeves, by affidavit, has testified that his dealership acquired the subject vehicle by dealer transfer from Bob Scofield Chrysler, Plymouth, Dodge, Inc. The certified records of the Alabama Department of Revenue establish title to the automobile went from Chrysler to Bob Scofield Chrysler, Plymouth, Dodge, Inc. on June 21, 1985; from Bob Scofield Chrysler, Plymouth, Dodge, Inc. to Gene Reeves Chrysler on September 17, 1985; from Gene Reeves to Ray Johnson on September 17, 1985; from Ray Johnson to Jan Johnson on May 7, 1992.