Judy NAEF; John Brining; Mark Moseley; Gregory C. Stauffer; Judy Loumakis; Joseph Bashaw; Henry L. Murphy, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

MASONITE CORPORATION, et al., Defendants.

No. 95–0901–AH–S.

United States District Court, S.D. Alabama, Southern Division.

Feb. 1, 1996.

K. W. Michael Chambers, Mobile, Alabama, for plaintiffs.

Warren Lightfoot, Birmingham, Alabama, Sandy Robinson, Mobile, Alabama, for defendants.

### ORDER

HOWARD, District Judge.

This matter is before the Court on Plaintiffs'[1] Motion for Remand. [Doc. # 2]. The Court held a hearing on this matter on January 23, 1996, and heard argument. After considering the briefs and exhibits filed by all affected parties and hearing oral argument, the Court finds that the removal was improper under 28 U.S.C. § 1446 and finds that this action is due to be remanded to the Circuit Court of Mobile County in accordance with 28 U.S.C. § 1447(c). The Court finds that removal was improper for two reasons: (1) complete diversity does not exist therefore this Court does not have subject matter jurisdiction over this action and (2) even if this action was a removable action, Defendants' Notice of Removal is procedurally defective because it came more than thirty (30) days after Defendants had information from which they could intelligently determine whether this action had become removable.

### I. Factual Background

Plaintiffs originally filed their class action Complaint in the Circuit Court of Mobile County, Alabama on December 9, 1994. *See* Notice of Removal [Doc. # 1]. On January 27, 1995, Plaintiffs' filed an amended Complaint. *See* Notice of Removal, attachment Number 8. Plaintiffs' claims arise out of a hardboard siding product manufactured by Masonite Corporation ("Masonite") and sold to thousands of builders and property owners throughout the United States. Plaintiffs allege that Masonite failed to "adequately design, formulate, and test its hardboard siding before distributing it as a durable and suitable home siding product, and failed to remove it from the marketplace or take other remedial action, either through its negligence or wanton misconduct." Amended Complaint at ¶ 2. Plaintiffs also allege that Masonite made various fraudulent statements with regard to the siding and that Masonite invented a scheme to hide the defects in the siding.

In addition to Masonite, Plaintiffs named four hardboard siding distributors as Defendants in this action: Stacy's Cash & Carry Building Materials ("Stacy's"), Ace Hardware, Inc., Scotty's Home Builders Supply ("Scotty's"), and Mobile Lumber & Building Materials, Inc. ("Mobile Lumber"). Plaintiffs allege in their amended Complaint that Stacy's, Ace Hardware, Inc.[2], and Mobile Lumber are corporations organized under the laws of the State of Alabama and have headquarters in Alabama (hereinafter the "Alabama dealers"). *See* Amended Complaint, ¶ 23–26. Plaintiffs allege that these dealers sold the defective siding to builders/contractors who then installed the siding on the homes or projects of the named Plaintiffs.

The amended Complaint alleges sixteen causes of action, two of which are against the Alabama dealers. *See* amended Complaint, Tenth Cause of Action and Eleventh Cause of Action. Plaintiffs' Tenth Cause of Action alleges a breach of implied warranty of merchantability and Plaintiffs' Eleventh alleges a breach of implied warranty of fitness. Plain-

1. Plaintiffs purportedly represent a nationwide class of purchasers of Masonite hardwood siding. The parties dispute whether the state court certified Plaintiffs' class before or after Defendants filed their Notice of Removal. The Court finds that the issue of whether the class has been certified is irrelevant to the issue of whether this matter should be remanded.

2. The parties dispute the citizenship of Ace Hardware. Defendants assert, and Plaintiffs do not contest, that Ace Hardware is incorporated in the State of Delaware with its principal place of business in Illinois. However, Plaintiffs contend that they mistakenly named "Ace Hardware, Inc." when they meant to name "Ace Home Center, Inc.," an Alabama corporation. Defendants state that "Ace Home Center, Inc." has never been served and is not a party to this suit. Even if Defendant "Ace" (whether "Ace" is "Ace Hardware, Inc." or "Ace Home Center, Inc.") cannot be counted as a diverse party, Stacy's and Mobile Lumber are non-diverse and diversity would not exist unless these parties were fraudulently joined or are no longer parties because of Plaintiffs' voluntary dismissal as discussed *infra*.

tiffs argue throughout their briefs in support of their Motion for Remand that they also have a mental anguish claim against the Alabama dealers, however, Michael Chambers, counsel for Plaintiffs, informed the Court at the hearing on this matter that the mental anguish claim had been voluntarily dismissed prior to the filing of the amended Complaint and that Mr. Chambers was mistaken in his argument in briefs that Plaintiffs still had such a claim.

Defendants argue that removal to this Court is properly grounded on two factors: fraudulent joinder and *de facto* dismissal of the resident Defendants. Defendants fraudulent joinder assertion is based on two theories. First, Defendants argue that as a matter of law Plaintiffs have no possibility of recovering against the Alabama dealers because they lack privity. Second, even if Plaintiffs' claims are viable, Plaintiffs, through their actions in state court, have shown that they do not intend to prosecute their claims against the Alabama dealers and that such Defendants were fraudulently joined to defeat diversity.

Alternatively, Defendants argue that the Alabama dealers were *de facto* dismissed at a hearing on Plaintiffs' motion for class certification in state court by one of Plaintiffs' counsel, Mr. Richard Dorman. Defendants point to the following colloquy:

> **The Court:** ... Let me ask somebody from the plaintiffs, I realize probably that there is some diversity reason here, but other than that what are we doing with these four subclasses of local suppliers?
> **Mr. Dorman:** Judge, they were named initially for purposes of, I guess, getting the proceedings going. They are not essential for the liability issue in this case.

(partial transcription from October 16, 1995 hearing at R–34).

## II. PLAINTIFFS' MOTION FOR REMAND

■ Federal courts have original jurisdiction over civil actions that arise under the laws of the United States, *see* 28 U.S.C. § 1331 ("federal question jurisdiction"), as well as over civil actions between citizens of different states in which the amount in controversy exceeds $50,000. *See* 28 U.S.C. § 1332(a)(1) ("diversity jurisdiction"). Defendants argue that this Court has jurisdiction of this action pursuant to diversity jurisdiction. The Court notes that removal is a purely statutory right and should be construed strictly in favor of state court jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941).

### A. Grounds for Removal

The Court holds that Defendants have failed to prove subject matter jurisdiction based on diversity of citizenship because the Court finds that the Alabama dealers were neither fraudulently joined nor voluntarily dismissed.

#### 1. Fraudulent Joinder

■ In determining whether the joinder of parties was fraudulent, the district court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff" *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. Unit A 1981). In this context, the proceeding "is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P., Rule 56(b)." *Id.* at 549 n. 9.

*Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 815–816 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993).

■ In order for removal under section 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). At least two of the Alabama dealers are corporate citizens of Alabama (Stacey's Cash and Carry Building Materials and Mobile Lumber and Building Material, Inc.). Defendants argue that all four of the siding dealers were fraudulently joined to defeat diversity. The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent. *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983). The Eleventh Circuit has defined a defendant's burden by instructing a district court to:

(1) look to see whether there is no possibility the plaintiff can establish any cause of action against the resident defendant; and

(2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court.

*Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989). As stated above, in making such determinations, the Court must resolve all questions of fact and controlling law in favor of the plaintiff. *See also Cabalceta* 883 F.2d at 1561. Defendants do not contend that Plaintiffs fraudulently alleged jurisdictional facts in order to bring the Alabama dealers into state court. Therefore, the Court must determine whether "there is no possibility [Plaintiffs] can establish any cause of action against the resident defendant[s]."

### a. Privity

■ Defendants argue that where a plaintiff claims "only economic loss or property damage, there must be privity of contract between the 'buyer'/plaintiff and a 'seller' or there is no right of action for implied warranty." Brief in Opposition, p. 40. Defendants argue that because none of the named Plaintiffs directly purchased the siding from the Alabama dealers, Plaintiffs cannot establish a cause of action for breach of an implied warranty of merchantability or fitness against the dealers. Plaintiffs argue that "privity of contract exists when the plaintiff is a third-party beneficiary of a contract between the buyer and the seller." Plaintiffs' Reply Brief, p. 6. The Court must view the law of Alabama in favor of Plaintiffs and unless it would be impossible for a reasonable jurist to find that Plaintiffs have a cause of action for breach of implied warranty against the Alabama dealers, the Court must find that Plaintiffs have not fraudulently joined the Alabama dealers.

Defendants are correct in their statement of Alabama law that privity is required in an action for breach of implied warranty where the only injury alleged is economic. *See* Ala.Code §§ 7–2–314, 7–2–315; *State Farm Fire and Casualty Co. v. J.B. Plastics, Inc.,* 505 So.2d 1223 (Ala.1987). However, Plaintiffs argue that they meet Alabama's privity requirement because they are third party beneficiaries to the contract between the builders/contractors and the Alabama dealers. The Court of Civil Appeals of Alabama has held that where a third party is the intended beneficiary of a contract, although such party was not a party to the contract, the third party may "maintain an action against the promisor." *Chandler v. Hunter,* 340 So.2d 818, 822 (Ala.Civ.App.1976). The Court in *Chandler* held that a third party beneficiary may maintain a cause of action for breach of an implied warranty of merchantability of fitness for use. Therefore, the Court finds that a reasonable Alabama jurist could find that Plaintiffs were third party beneficiaries to the contract between the Alabama dealers and the builders/contractors, and, under *Chandler,* Plaintiffs have a cause of action against the Alabama dealers. The Court finds that the Alabama dealers were not fraudulently joined under Defendants' theory that Plaintiffs cannot maintain a cause of action against the dealers because of lack of privity.

### b. Actions in State Court

■ Defendants second ground for fraudulent joinder is that Plaintiffs' actions in state court indicate that Plaintiffs do not intend to proceed with their claims against the resident parties. Defendants cite *Mask v. Chrysler Corporation,* 825 F.Supp. 285 (N.D.Ala.1993), *aff'd,* 29 F.3d 641 (11th Cir. 1994) and *Arnold v. Ford Motor Company,* CV 95–PT–0073–M, (an unpublished opinion of Judge Robert B. Propst, N.D.Ala.1995) as authority for the Court to find that the Alabama dealers were joined only to defeat diversity. The Court finds that the actions of Plaintiffs in this cause are not similar to the actions of the plaintiffs in the *Mask* case and the Court respectfully disagrees with the holding of the *Arnold* case.

### *Mask v. Chrysler Corporation*

In *Mask,* the named plaintiffs brought a state court action against the Chrysler corporation and against various local dealerships. The Court in *Mask* held that the various individual dealerships that handled Chrysler

products had been fraudulently joined by the plaintiffs to avoid diversity jurisdiction. The Court made such a determination based on its review of the actions of the plaintiffs with respect to the dealerships. The Court found that: (1) one of the plaintiffs' attorney's affidavits showed that he never expected to collect from the dealers in this case; (2) another of plaintiffs' attorneys stated in a letter that "the totality of the problems were due to the manufacturing process;" (3) the history of cases filed against Chrysler dealerships showed that there was no possibility for the plaintiffs to establish a cause of action against the resident defendants; (4) except for one case, there was no case on record in which suit filed against a dealer had been successful; and (5) the deposition testimony of one of the named plaintiffs established that there was no legitimate claim against the non-diverse defendant. *Mask,* 825 F.Supp. at 288. Although Defendants in the action before this Court have alleged facts similar to the evidence before the *Mask* court, such facts, when viewed in a light most favorable to Plaintiffs, do not indicate that the resident Defendants were named solely to defeat diversity.

Defendants argue that Plaintiffs' briefs and arguments before the state court have focused exclusively on the allegedly defective nature of the Masonite siding indicating fraudulent joinder. The Court disagrees. Plaintiffs have only two causes of action against the Alabama dealers. Pre-trial argument on the liability of such Defendants may not have been necessary. The Court notes that Defendants never moved to dismiss the Alabama dealers, therefore, Plaintiffs did not have to argue the liability of such Defendants. The fact that they have not explained the liability of the Alabama dealers before trial does not impress the Court as evidence that such Defendants were fraudulently joined.

Defendants urge the Court to consider the existence of a similar state court action, *Bettner v. Georgia Pacific Corporation,* CV—95—3330, as evidence of fraudulent joinder. Some of the plaintiffs attorneys in *Bettner* of from the same firm as Plaintiffs' attorneys in this action. *Bettner* is a suit over allegedly defective hardboard siding manufactured by Georgia Pacific. Georgia Pacific is a Georgia corporation and one of the plaintiffs is a Georgia citizen. Therefore, complete diversity does not exist. Defendants argue that the plaintiffs in that action have not sued siding distributors and such is evidence that the distributors in this action were sued only to defeat diversity. The fact that attorneys for Plaintiffs have filed a similar case in state court that does not include dealers of siding is unimpressive. In *Mask,* all but one of the similar state court cases filed against the dealerships were **dismissed** as a matter of law. Plaintiffs argue that the Georgia Pacific case involves a different factual scenario than the one before this Court. As in a motion for summary judgment, the Court must draw all reasonable inferences in favor of Plaintiffs. The fact that one similar case does not include siding dealers, when viewed in a light most favorable to Plaintiffs, does not indicate fraudulent joinder.

Finally, Defendants argue that Plaintiffs' attorneys have not sought to join any other siding dealers even though Plaintiffs represent a nationwide class indicates that Plaintiffs have no intention of proceeding against the Alabama dealers. The Court disagrees. The *Mask* court had before it specific evidence that clearly indicated that the plaintiffs did not intend to proceed against the resident parties. Judge Guin had an affidavit and a letter from the plaintiffs' attorneys that showed that they did not expect to collect from the dealers and that they were only interested in the manufacturer. In addition, the *Mask* defendants presented the Court with a history of similar cases where the dealers had been dismissed as a matter of law. Finally, Mr. Mask stated in his deposition that he had no legitimate claim against the resident dealer. Defendants have failed to come forward with such evidence in this action. Plaintiffs' counsel has never indicated that they do not intend to pursue the dealers. The named Plaintiffs have never affirmatively stated that they do not have a claim against the dealers. The action before this Court is not *Mask.*

*Arnold v. Ford Motor Company*

Defendants argue that the Court should follow the holding in *Arnold.* After reviewing the opinion, the Court agrees with Defendants that the case is similar. However, the Court holds that *Arnold* does not provide sufficient legal justification for its result.

In *Arnold* the named plaintiffs represented a putative class of all "persons who have purchased 1990 F–250 pick-up trucks." The plaintiffs brought a state court action against Ford Motor Company and a non-diverse dealer, Pollack Ford Company ("Pollack"). The defendants removed on the ground that Pollack had been fraudulently joined. The *Arnold* court cited the *Cabalceta* test as the test governing the issue of whether Pollack was fraudulently joined. The *Arnold* Court then held that "[t]here is some possibility that those class members whose vehicles were purchased from Pollack could recover from Pollack. However, it is obvious that those class members whose trucks were not purchased from Pollack have no possibility of maintaining any claim against Pollack. As to those class members joinder of Pollack is fraudulent" This Court cannot find legal support for such a conclusion.

The *Arnold* court first stated that fraudulent joinder only exists when there is "no possibility" of a claim against a non-diverse defendant and then the Court, without legal authority, holds that even though some of the plaintiffs have valid claims, most of them do not, therefore, as to those who do not, Pollack was fraudulently joined. This bifurcated analysis of a plaintiff class is without precedent. Although this Court is sympathetic to the argument that is seems unfair to defeat diversity where diversity exists as to only a small minority of a plaintiff class, the Court cannot find statutory or legal support for such a holding.

Title 28 U.S.C. § 1332 states that a district court "shall have original jurisdiction for all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between— (1) citizens of different States." Nothing in the plain language of the statute instructs a court that when determining citizenship it may look to each party without regard to the others. The *Arnold* court apparently looked at two sets of plaintiffs and decided that it as to one set of plaintiffs the resident defendant had been fraudulently joined. The United States Court of Appeals for the Eleventh Circuit in *Cabalceta* has held that a plaintiff cannot defeat diversity jurisdiction by fraudulently joining a resident defendant. The Eleventh Circuit created two bright-line tests to determine whether a plaintiff has committed such fraud. A district court must decide whether there is either **no possibility** of a cause of action against the resident defendant or whether the plaintiff committed fraud in alleging the citizenship of the defendant. There is no room in either test for bifurcating a plaintiff class and then looking at whether each of the class subsets has a cause of action against the resident defendant. This Court views the holding of the *Arnold* court as an alteration of the Eleventh Circuit's test. This Court will not join such an alteration without direction from the Eleventh Circuit.

The Court finds that the Alabama dealers were not fraudulently joined in this action.

### 2. *De Facto* Dismissal

■ As an alternative theory to the diversity jurisdiction of this Court, Defendants assert that Mr. Dorman dismissed the resident Defendants at the October 16, 1995 class certification hearing in state court. *See supra* at 1507. Defendants argue that Mr. Dorman's statement worked as a voluntary, *de facto* dismissal of the resident Defendants in this case. The Court finds that the statement does not indicate that Plaintiffs intended to dismiss the Alabama dealers from this action.

■ "In order to constitute a voluntary abandonment . . . there must be a definite or unequivocal expression of intent to discontinue the action against the resident party." *Delatte v. Zurich Insurance Co.,* 683 F.Supp. 1062, 1063 (M.D.La.1988), (citing *Erdey v. American Honda Co., Inc.,* 96 F.R.D. 593, 599 (M.D.La.1983), *modified on other grounds,* 558 F.Supp. 105 (M.D.La.1983) and *DiNatale v. Subaru of America,* 624 F.Supp. 340 (E.D.Mich.1985)). The Court finds that Mr. Dorman's statement is not a sufficient

"unequivocal expression of intent to discontinue." In Plaintiffs' Briefs and at the hearing on Plaintiffs' Motion for Remand, counsel for Plaintiffs argue that such statement simply meant that the resident dealers were named as the first Defendants in this action because, Plaintiffs' counsel determined that the dealers were the first obvious parties that should be sued. Plaintiffs' counsel argues that while it is true that the dealers are not necessary to prove liability as to the manufacturer, such does not mean that the dealers are not a part of this action and are not parties from whom Plaintiffs believed they are entitled to recover. The Court has read the entire portion of the transcript of the hearing supplied by Defendants and the Court cannot find sufficient context from the hearing that would make the statement an "unequivocal expression of intent" to dismiss the resident Defendants. In fact, it appears from the transcript that the state court did not ask for an explanation of the statement and that neither the state court nor Defendants' counsel suggested that the dealers should be dismissed. In a light most favorable to Plaintiffs, the Court finds Plaintiffs' explanation of the statement to be reasonable and, therefore, the Court finds that Plaintiffs' counsel's statement was not a *de facto* dismissal of the resident Defendants.

Defendants have failed to satisfy their burden of showing that the resident Defendants were either fraudulently joined or voluntarily dismissed. Plaintiffs' Motion for Remand on the ground that the Court lacks diversity jurisdiction over this action is **GRANTED**.

### B. Defects in Procedure [3]

### § 1446. Procedure for removal

(b) The notice of removal of a civil action or proceeding shall be filed within **thirty days** after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within **thirty days** after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within **thirty days** after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (emphasis added).

As an alternative ground for Plaintiffs' Motion for Remand, Plaintiffs' argue that even if this action is one that may be removed, which Plaintiffs deny, Defendants' Notice of Removal is defective because it came more than thirty days after Defendant could have intelligently ascertained that this action had become removable. The Court agrees and finds that Defendants' Notice of Removal is defective because it came too late. Therefore, the procedural defect in Defendants' Notice of Removal serves as an additional and separate ground for remand.

■ When the initial pleading fails to provide at least a clue that the action is removable, the thirty day period does not begin. *See Richman v. Zimmer, Inc.*, 644 F.Supp. 540, 541 (S.D.Fla.1986). In such a case, the thirty day time limit for notice of removal begins at the point when the defendant could have intelligently ascertained that the action was removable. *Kuhn v. Brunswick Corp.*, 871 F.Supp. 1444, 1446 (N.D.Ga. 1994). " '[T]he burden is on the defendant seeking removal to scrutinize the case and remove it in a timely fashion.' " *Id.* (quoting *Kaneshiro v. North Am. Co. for Life and Health Ins.*, 496 F.Supp. 452, 455–456, 462

---

3. The Court has already determined that this action is not removable. The Court makes the following procedural defect finding as a separate ground for granting Plaintiffs' Motion for Remand. The Court's analysis of Defendants' procedural defect proceeds as if this action were removable. Nothing should be taken from this section of the Court's Order to mean that the Court is contradicting its earlier finding that this action is not properly removable because complete diversity does not exist between the parties.

(D.Haw.1980)). Therefore, in the action before this Court, the Court must determine at what point Defendants could have intelligently ascertained that the action was removable through reasonable scrutiny of the pleadings and facts of the action as it developed in state court. Defendants filed their Notice on November 15, 1995, therefore, any date before October 16, 1995, would fall outside of the thirty day period.

### 1. Fraudulent Joinder

#### a. Privity

■ Defendants argue that Plaintiffs do not have a viable claim for breach of implied warranty of merchantability and breach of implied warranty of fitness, because Plaintiffs are not in privity with the Alabama dealers. As discussed *supra* the Court holds otherwise. However, even if Defendants' argument had merit, Defendants' could have intelligently ascertained this argument by no later than May 25, 1995. Viewing the evidence in a light most favorable to Plaintiffs, Defendants were aware of the privity argument as early as December 27 and 28, 1994, the date of service of the original Complaint on Defendants Masonite and International Paper. The face of the original Complaint indicates that the siding was purchased by a party other than Plaintiffs and then installed on Plaintiffs' homes and projects.

However, if the original Complaint did not contain sufficient facts from which Defendants could have ascertained their privity argument, then the amended Complaint provided such facts. The record before the Court does not clearly show when Defendants received service of the amended Complaint, but Defendants' Brief indicates that Defendants received service of the amended Complaint soon after it was filed on January 27, 1995. The amended Complaint lists each Plaintiff and names the dealer, if known, from whom the siding was purchased. *See* amended Complaint, pp. 9–11. Defendants state in their Notice of Removal that "[t]he amended complaint . . . does not allege facts sufficient to establish liability against any of the Alabama dealers. . . ." Notice of Removal, p. 5. Therefore, Defendants admit that they were aware of their lack of privity argument upon service of the amended Complaint, yet a Notice of Removal was not filed until approximately ten months after service of such.

Finally, even if Defendants could not have realized their privity argument from the face of the original or amended Complaint, then the Court finds that Defendants should have been aware of their lack of privity argument by the dates of the depositions of the named Plaintiffs. According to Defendants, Plaintiffs were deposed during discovery and "none of the named Plaintiffs identified any facts that would indicate liability on the part of the retailers." Brief in Opposition, p. 8. Therefore, giving Defendants every benefit of doubt possible, the Court finds that the latest date on which Defendants could have ascertained that the action was removable based on lack of privity was the date of the last of the named Plaintiffs' depositions, which was the deposition of Henry Murphy on May 25, 1995. *See* Exhibit 7 to Defendants' Brief in Opposition. All of the named Plaintiffs were deposed on or before May 25, 1995. Therefore, Defendants' Notice of Removal filed on November 15, 1995, comes outside of the thirty day period defined in 28 U.S.C. § 1446(b).

#### b. Actions in State Court

■ Defendants second argument supporting fraudulent joinder is that "Plaintiffs actions before the state court establish that the Alabama dealers have been fraudulently joined in this action for the sole purpose of defeating this Court's diversity." Notice of Removal, p. 5. Defendants list several facts, allegedly non-exhaustive, that evidence Plaintiffs' fraudulent joinder of the Alabama dealers. Defendants point to (1) Plaintiffs' "briefs and arguments before the state court," (2) the fact that Plaintiffs' lawyers filed a similar action in state court between non-diverse parties that does not include dealers or suppliers of siding as defendants, and (3) Plaintiffs have not attempted to name other siding dealers as defendants in this action, even though this is a nationwide action and therefore other dealers would apparently also be liable. Defendants assert that all of these allegations are facts pointing to fraudulent joinder. The Court finds that

Defendants were aware of all of these clues that showed that the action was removable well before October 16, 1995.

### i. Briefs and Argument

The portions of the state court record submitted to this Court in support of the Notice of Removal show that many briefs and arguments had been submitted to the state court prior to October 16, 1995. Defendants state in their Brief in Opposition that "plaintiffs simply ignored defendants' repeated arguments that plaintiffs' joinder of these retailers made no sense." Brief in Opposition, p. 2. On October 16, 1995, the state court heard oral argument on Plaintiffs' motion to certify a class. Both parties had submitted briefs before this date. Defendants had received numerous briefs and were aware of Plaintiffs' arguments before October 16, 1995. Therefore, the thirty day period began to run before October 16, 1995.

### ii. Bettner, et. al. v. Georgia Pacific Corporation

Defendants argue that an action similar to the one before this Court was filed on September 22, 1995, in the Circuit Court of Mobile County, Alabama, *Bettner, et al. v. Georgia Pacific Corporation*, CV–95–3330. The attorneys representing the plaintiffs in *Bettner* are from the same law firm as the Plaintiffs' attorneys in this action. Defendants argue that *Bettner* is a similar action over defective siding, but that complete diversity exists without the need to bring in siding suppliers. Defendants argue that the actions of Plaintiffs' attorneys in the *Bettner* case indicate that the suppliers were fraudulently joined in the action before this Court. Defendants knew or should have known of the filing of *Bettner* prior to October 16, 1995.

### iii. Failure to add other dealers

As a third piece of evidence of fraudulent joinder, Defendants allege that although Plaintiffs purport to bring this action on behalf of a nationwide class, Plaintiffs have not named any other dealers who may have sold siding to the rest of the class. Defendants were aware of this fact in December of 1994, when Defendants were served with the original Complaint, and were made further aware in January of 1995 when Defendants received service of the amended Complaint. This action proceeded for almost eleven months before Defendants filed their Notice of Removal. As Defendants argue in their Brief, Defendants raised issue of the propriety of the joinder of the Alabama dealers repeatedly in state court. Defendants' arguments belie the fact that they were aware that Plaintiffs were not adding other dealers before October 16, 1995.

As the Court understands Defendants' argument, the above listed clues combine to show that the Alabama dealers were fraudulently joined in this action to defeat diversity. However, the Court finds that Defendants were aware of all of these "clues" that this action was removable well before October 16, 1995. This action had proceeded for nearly a year in state court before Defendants filed their Notice of Removal. Defendants do not argue that Plaintiffs suddenly and abruptly changed their strategy in October of 1995, furnishing Defendants with the clues necessary to ascertain that the action was removable. Instead, Defendants' own Brief shows that they were aware of these clues long before October 16, 1995, yet Defendants did not file their Notice until November 15, 1995. Therefore, the Court holds that Defendants' Notice of Removal based on fraudulent joinder is procedurally defective because it was filed more than thirty days after Defendants could have intelligently ascertained that the action was removable.

### 2. *De Facto* dismissal

Defendants alternative basis for removal is the alleged *de facto* dismissal of the Alabama dealers by Plaintiffs' counsel Mr. Dorman at the class certification hearing on October 16, 1995. If this were Defendants only ground for removal, then their Notice of Removal would be timely. However, as shown above, the *de facto* dismissal is only one of Defendants' many clues that the action was removable. Removal statutes are to be strictly construed in favor of remand. The Court holds that Defendants Notice of Removal is procedurally defective because it was filed too late. Plaintiffs Motion for Remand is **GRANTED** on the additional ground

that Defendants' Notice of Removal is procedurally defective.

## III. CONCLUSION

At the end of the hearing on this matter, counsel for Defendants requested the Court to base its decision on lack of supplemental jurisdiction, if the Court decided to find that it had no jurisdiction over this action. The Court **DENIES** such motion. The Court will not base a ruling on a fictional ground so that Defendants can appeal such a ruling. Defendants have the right to seek mandamus.

The Court holds that it does not have subject matter jurisdiction over this action because the resident Defendants were not fraudulently joined or *de facto* dismissed. The Court finds that the Alabama dealers are proper parties to this action and therefore complete diversity does not exist. The Court also holds that even if this were a removable action, Defendants failed to file their Notice of Removal within thirty days of the date from which Defendants could intelligently ascertain that the action was removable as required by 28 U.S.C. § 1446. Therefore, Plaintiffs' Motion for Remand is due to be and hereby is **GRANTED.** This action is **REMANDED** to the Circuit Court of Mobile County in accordance with 28 U.S.C. § 1447(c). The Clerk of Court is directed to take all necessary actions to ensure the proper and immediate remand.