Jimmy B. ATCHISON, et al., Plaintiffs.

v.

WOODMEN OF THE WORLD INSURANCE SOCIETY, C.F. "Kay" Hawkins, Clayton Franklin Kight, Bobby Martin, Raymond K. "Pee–Wee" Davidson, David Upchurch and Jerry Lennon, Defendants.

No. CIV. A. 96–1098–CB–C.

United States District Court,
S.D. Alabama,
Southern Division.

Nov. 7, 1997.

---

S.C. Middlebrooks, Mobile, AL, Stuart C. DuBose, Jackson, AL, John W. Sharbrough, III, Mobile, AL, Timothy E. Eble, Charleston, SC, Theodore Stern, Covington, Patrick,

Hagins & Lewis, Greenville, SC, Michael Joseph Brickman, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, Paul Doolittle, Greenville, SC, for Jimmy B. Atchison.

Stuart C. DuBose, Jackson, AL, for Peter Jr. Ryser, Carl W. Bumpers, Myra J. Bumpers, Franklin D. Howell, Jacquelyn S. Howell.

Archibald T. Reeves, IV, Walter T. Gilmer, Jr., Jerry A. McDowell, McDowell Knight Roedder & Sledge, L.L.C., Mobile, Al, for Woodmen of the World Life Ins. Soc.

Clayton Frank Kight, Jackson, AL, pro se.

Vernon L. Wells, II, Walston, Stabler, Wells, Anderson & Bains, Birmingham, AL, for Bobby Martin, Raymond K. "Pee Wee" Davidson, David Upchurch, Jerry Lennon.

Benjamin Rowe, Boyd Miller, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for C.F. "Kay" Hawkins.

### OPINION and ORDER

BUTLER, Chief Judge.

This matter is before the Court on plaintiffs' motion to remand this action to state court (Doc. 34) to which defendant Woodmen of the World Insurance Society and all but one of the named individual defendants [1] have filed separate responses (Docs. 43 & 5 1). After due consideration of all issues raised, the Court finds that the motion to remand is due to be granted.

### I. Procedural Background

In this action, which was originally filed in the Circuit Court of Clarke County, Alabama, several individual plaintiffs seek to represent themselves and a class "of all persons or entities ... who have, or had at the time of the policy's termination, an ownership interest in one or more life insurance or universal life insurance policies issued by the ... defendants[.]" [2] Defendant Woodmen of

---

1. Defendant Clayton Frank Kight has not joined in the opposition to the motion to remand. After this action was removed, Kight's counsel withdrew. Kight subsequently filed a pleading attempting to withdraw his consent to removal because he contends that his attorney consented to removal without Kight's agreement. In light of the Court's decision to remand this case to state court, it is unnecessary to determine the effect of Kight's attempt to withdraw his consent.

2. The class is limited to persons who purchased policies within thirteen years prior to the date this action was filed. Excluded from the class

the World Insurance Society ("Woodmen") is a Nebraska corporation with its principal place of business in Nebraska. Defendants C.F. "Kay" Hawkins, Clayton Frank Kight, Bobby Martin and Raymond K. "PeeWee" Davidson are agents and employees of Woodmen of the World all of whom reside in Alabama. Defendant Jerry Lennon was the South Alabama manager for Woodmen from 1987 through 1996. Lennon was a resident of South Carolina at the time this action was filed. David Upchurch, an Alabama resident, became the South Alabama manager in 1996.

Plaintiffs allege that they (and the members of the proposed class) were fraudulently induced to purchase life insurance policies from Woodmen as the result of misleading sales presentations, policy information and marketing information developed by Woodmen and used by its nationwide sales force. Specifically, plaintiffs contend that the defendants misrepresented: (1) the number of payments a policyholder would have to pay, (2) the policy's cash value or benefits, (3) that the insurance policy was actually an investment plan, (4) that it would be beneficial to "roll over" the cash value of an existing insurance policy to purchase a universal life policy and (5) that the premium would be lower than it actually was. Compl. pp. 6–8. The complaint further alleges that the defendants "embarked upon a scheme and common course of conduct through their state and area managers and a nationwide sales force to sell Policies to the public and current Woodmen insureds through false and misleading uniform sales presentation and policy illustrations." *Id.* p. 13. Based on these allegations, plaintiffs assert claims under Alabama law for churning or twisting, breach of contract, fraud, misrepresentation, negligent or wanton supervision or training and unjust enrichment.

Woodmen removed the case to this Court, asserting both diversity and federal question jurisdiction. Woodmen and the individual defendants allege that there is diversity jurisdiction because nondiverse defendants were

fraudulently joined or, alternatively, because claims against nondiverse defendants were fraudulently misjoined. Further, defendants assert that federal question jurisdiction exists because the class, as defined in the complaint, includes members whose claims would be preempted under the Employee's Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

## II. Legal Analysis

### A. The Right of Removal

■ Unless Congress expressly provides otherwise, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction. *Lane v. Champion Internat'l Corp.*, 827 F.Supp. 701, 705 (S.D.Ala.1993). A removing defendant bears the burden of establishing the existence of federal jurisdiction. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996). Thus, the Court must consider whether Woodmen has met its burden of proving either diversity or federal question jurisdiction.

### B. Diversity Jurisdiction

Diversity jurisdiction exists where the amount in controversy exceeds $50,000[3] and there is diversity of citizenship between the parties. 28 U.S.C. § 1332, Because there is no contest as to whether the amount in controversy requirement is met, the only issue is whether there is diversity of citizenship between the parties. "Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity—every plaintiff must be diverse from every defendant." *Tapscott*, 77 F.3d at 1359. Although every defendant is not di-

---

are persons who entered settlement agreements releasing defendants from liability and persons who died while their policies were in force.

**3.** This action was removed prior to the effective date of the Federal Courts Improvement Act of 1996, P.L. 104–317 (1996) which amended § 1332 to increase the amount in controversy requirement from $50,000 to $75,000.

verse, Woodmen argues that the citizenship of the nondiverse defendants should be ignored because those defendants were fraudulently joined to defeat federal jurisdiction.

■ "The removing party bears the burden of proving that the joinder ... was fraudulent." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989). According to the traditional fraudulent joinder analysis, joinder is fraudulent if: (1) there is "no possibility that the plaintiff can establish any cause of action against the resident defendant" or (2) if the plaintiff "has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court." *Id.* In *Tapscott* the Eleventh Circuit added a new category of fraudulent joinder— fraudulent misjoinder under Fed. R. Civ. P. 20(a). The court recognized that, in some circumstances, "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott*, 77 F.3d at 1360.

Defendants first argue that joinder is fraudulent because *as to the vast majority of class members* there is no possibility of recovery against the nondiverse defendants.[4] Although defendants implicitly recognize that some plaintiffs, notably the *named* plaintiffs, do have a possibility of recovery against the nondiverse defendants, they contend that the number of plaintiffs with claims against these defendants is so small and insignificant as to make joinder of these claims fraudulent.[5]

■ This concept of fraudulent joinder based on a bifurcated analysis of the claims of the unnamed and named plaintiffs has become a popular one among defendants in class action removals in this Circuit. As

defendants point out, the proposition has been adopted by several district judges, beginning with *Arnold v. Ford Motor Co.*, Civil Action No. CV 95–PT–0073–M (N.D.Ala. May 2, 1995). *See also Kizzire v. General Motors Corp.*, Civil Action No. 95–B–1322–J, 1996 WL 539739 (N.D.Ala. Mar. 16, 1996), *Seale v. Nissan Motor Acceptance Corp.*, No. 95–1008–BH–M, 1996 WL 539899 (S.D.Ala. Mar. 7, 1996). However, it is one which the undersigned has rejected. *See, e.g., Susette Williams v. Metropolitan* Life, Civil Action No. 96–1 107–CB, slip op. (S.D.Ala. Feb. 5, 1997) (following *Naef v. Masonite Corp.*, 923 F.Supp. 1504 (S.D.Ala.1996)).

As Judge Howard noted in *Naef*, *Arnold* and its progeny all suffer from the same shortcoming. There is no authority to support the conclusion these courts have reached. *Naef*, 923 F.Supp. at 1510. Moreover, the bifurcated joinder analysis adopted in *Arnold* ignores "hornbook law, based on [76] years of Supreme Court precedent, that complete diversity is required between the named plaintiffs and the named defendants in a federal class action." *In re Agent Orange Product Liability Litigation*, 818 F.2d 145, 162 (2nd Cir.1987); *see also Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053 1058–59, 22 L.Ed.2d 319 (1969) (diversity of citizenship in class action as long as no nondiverse members are *named* parties). Instead, *Arnold* stands the traditional class action diversity inquiry on its head. Rather than inquiring first whether there is complete diversity between the *named* plaintiffs and the defendants, the *Arnold* line of cases examines whether there is complete diversity between *unnamed* class members and the defendants.[6]

---

4. Defendants also contend that joinder is fraudulent because plaintiffs failed to respond to certain dispositive motions filed by "all of the Alabama defendants *represented by counsel*". Woodmen's Brf. p. 6 (emphasis added). Failing to respond is not, in the Court's opinion, tantamount to admitting that there is no possibility of establishing a claim. Moreover, even if each of those motions had been granted on the merits, this would not prove fraudulent joinder as to *each* of the nondiverse defendants. Defendants omit a small but important fact from their carefully worded argument. Defendant Frank Kight (who is not repre-

sented by counsel) did not file a motion to dismiss.

5. The nondiverse defendants are agents who work in the south Alabama area. The named plaintiffs assert that they purchased insurance policies from one of these defendants. Since this is a nationwide class, there are obviously many class members who have no claims against these defendants

6. Finding that there is complete diversity between unnamed members of the putative class, these courts then have invoked 28 U.S.C.

As this Court noted in *Williams,* policy considerations also militate against the bifurcated fraudulent joinder analysis proposed by defendants. *Williams,* slip op. at p. 9. Those policy considerations were set forth in *Burns v. Windsor Ins. Co.,* 31 F.3d 1092 (11th Cir.1994):

> Federal courts are courts of limited jurisdiction. While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim. Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; ... removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.

*Id.* at 1095 (citations omitted). In contrast, the adoption of the concept of fraudulent joinder urged by defendants would necessarily expand federal removal jurisdiction. This Court is unwilling to make such a departure from established law without clear guidance from the Eleventh Circuit.[7]

Next, defendants argue that plaintiffs' claims against the nondiverse defendants have been fraudulently misjoined with the class claims against the resident defendants. As discussed above, *Tapscott* recognized that fraudulent joinder, in some instances, may include fraudulent misjoinder. In that case, a number of plaintiffs had brought two distinct sets of claims against two distinct classes of defendants. Both arose from extended service contracts, but there the similarity ended. The first group of claims included one set of plaintiffs, non–diverse defendants and involved extended service contracts issued by automobile dealers. The second group of claims was brought by completely different plaintiffs, named only a non–diverse defendant and involved extended service contracts issued by retailers. Under these facts, the court held that "[plaintiffs'] attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id.* However, the court also recognized that the "mere misjoinder" does not necessarily equate to fraudulent joinder. *Id.*

■ Rule 20(a) sets forth two specific requirements for permissive joinder: "(1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all the parties must arise in the action." *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974). "The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* Therefore, the rule "is liberally interpreted in favor of joinder." *Apache Products Co. v. Employers Ins. Of Wausau,* 154 F.R.D. 650, 659 (S.D.Miss.1994), *see also, United Mine Workers v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1137–38, 16 L.Ed.2d 218 (1966) ("joinder of claims, parties and remedies is strongly encouraged").

Defendants argue that plaintiffs' claims against the nondiverse defendants do not arise from the same transaction or occurrence or from the same series of transactions or occurrences as the class claims against Woodmen. In keeping with the liberal interpretation of the joinder requirements, "there is no strict rule for determining what constitutes the same transaction or series of transactions for purposes of Rule 20(a)." *Id.* Instead, courts look at each case individually to determine whether the claims are logically related, thereby allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* 2d § 1653.

§ 1367(a) to exercise supplemental jurisdiction over claims against the resident defendants.

**7.** As this Court pointed out in *Williams,* defendants' bifurcated fraudulent joinder analysis blurs the bright-line fraudulent joinder tests adopted by the Eleventh Circuit: "[W]hat percentage of the plaintiff class is enough to make the joinder proper? Might reasonable judges disagree? Would the Court be reduced to 'I know not the exact amount of maintainable claims necessary to remand, but I know fraudulent joinder when I see it?'" *Williams,* slip op. at 11.

Defendants rely heavily on *Turpeau v. Fidelity Financial Services, Inc.*, 936 F.Supp. 975 (N.D.Ga.1996), in support of their argument that plaintiffs claims do not arise from the same transaction or occurrence. In that case, several individual plaintiffs filed a class action suit against a number of unrelated lenders and life insurance companies. The plaintiffs' claims arose from alleged overcharges for credit life insurance purchased in conjunction with automobile loans. When the claims were sorted out, each plaintiff had only a claim against the lender and the insurer involved in his transaction. With one exception, each of these transactions involved different lenders and different insurers. Consequently, the court, following *Tapscott* looked to Rule 20(a) to determine whether the claims *against* these defendants were properly joined. Not surprisingly, the Court found that the plaintiffs' claims did not arise from the same transaction or series of transactions because "each credit transaction was made by different Plaintiffs with different Defendants." *Id.* at 978.

Relying on a statement taken out of context from *Turpeau*, defendants in the instant case argue that joinder is improper because "each defendant [has] not injured each plaintiff." *Id.* However, the *Turpeau* court was not identifying a requirement that each defendant must necessarily have injured each plaintiff in order for joinder to be proper under Rule 20. Instead, the court was attempting to distinguish a case in which joinder had been found proper:

> Plaintiffs, however, urge this court to embrace the statement in *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974), that joinder is permitted under Rule 20 if the transactions are 'reasonably related.' In *Mosley*, however, each plaintiff was asserting a discrimination claim against General Motors and the union for a company–wide policy of discrimination. *Id.* Each plaintiff therefore was allegedly injured by the same actors which is distinguishable from the instant case where each Defendant has not injured each Plaintiff.

*Id.* While joinder may be proper when each defendant has injured each plaintiff, it is not the only circumstance in which Rule 20 applies.

█ The instant case is not like *Tapscott* where there was no logical relationship between one set of plaintiffs' claims against the diverse defendant and another set of plaintiffs' claims against the nondiverse defendants. Nor is it like *Turpeau* where each plaintiff had a separate and unrelated claim against separate defendants who happened to have engaged in a similar practice. Instead, there is a logical connection between the named plaintiffs' claims against the nondiverse defendants and the claims of the class as a whole. The class claims arise from purported fraudulent marketing techniques and sales practices devised by Woodmen. According to the complaint, the fraud was perpetrated on the class by Woodmen through its nationwide sales force. The nondiverse defendants against whom claims are asserted are agents who were part of the nationwide sales force that allegedly carried out the fraud on behalf of Woodmen. Such claims are sufficiently related to support permissive joinder. *See Ren–Dan Farms v. Monsanto Co.*, 952 F.Supp. 370, 375 (W.D.La. 1997) (finding that, even if *Tapscott* applied, joinder was not improper where claims against resident regional sales manager who sold seeds which were allegedly falsely advertised were joined with claims against non–resident companies that developed and marketed seed).

## C. Federal Question Jurisdiction

Defendants argue that the action was properly removed because the class "had been conditionally certified at the time of removal, and, as defined, clearly included members who possess ERISA claims." Woodmen's Brf. p. 20. According to defendants, the Court has federal question jurisdiction over the ERISA claims [8] and supplemental jurisdiction over the claims of the remaining class members pursuant to 28

---

**8.** The Supreme Court has held that state law claims that relate to an ERISA plan are deemed to arise under the laws of the United States and, therefore, give rise to federal question jurisdiction. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

U.S.C. § 1367. Defendants' ERISA argument fails for two reasons. First, the Court is not persuaded that ERISA applies to any claims asserted by unnamed class members. Second, even if ERISA applied, jurisdiction is not determined by the claims of unnamed class members.

■ Defendants, who have the burden of proving subject matter jurisdiction, have offered no factual or legal support for their assertion that some class members "have claims arising out of and relating to an ERISA Welfare Benefit Plan." Even assuming, *arguendo*, that some of the class members would be covered by ERISA plans, there is no evidence that the claims in this case "relate to" those ERISA plans. In *Morstein v. National Ins. Services Inc.*, 93 F.3d 715 (11th Cir.1997), the appellate court narrowed the scope of ERISA preemption in this Circuit, holding that "when a state law claim brought against a non–ERISA entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA." *Id.* at 722. Specifically, the court held that ERISA did not preempt a claim against an insurance agent and the agency he represented for fraudulently inducing plaintiff to change benefit plans. The allegations in this case are similar to those in *Morstein.* Plaintiffs contend that the defendant insurance company and its agents fraudulently induced them to purchase policies or to switch from an existing policy to a new policy. Because defendants have failed to demonstrate that plaintiffs' claims would affect the relationship between principal ERISA entities, the Court finds that ERISA does not preempt plaintiffs' claims. *See id.* at 722. ("ERISA entities are the employer, the plan, the plan fiduciaries and the beneficiaries under the plan.")

■ Moreover, removal would not be appropriate at this stage even if some of the unnamed plaintiffs' claims were preempted. As discussed above, jurisdiction in a class action is properly determined by looking at the claims of the *named* plaintiffs. *See supra* pp. 838–39. Once again, defendants turn this fundamental principle upside down by looking first to the unnamed plaintiffs for the possibility of a federal question and then attempting to piggyback the claims asserted by the named plaintiffs.

The idea of ERISA preemption based on claims possessed by putative class members has been rejected by other courts. In *Jhamb v. California Physicians Service,* 1996 WL 61281, No. C–93–2962 Slip. Op. (N.D.Cal. Feb. 6, 1996), the court dismissed an identical preemption argument:

Possession of subject matter jurisdiction is a fundamental requirement of the federal courts as they are courts of limited jurisdiction. Jurisdiction is governed by the Constitution and statutes of the United States, it is a question which must precede the consideration of class claims.

*Id.* at *3. Similarly, in *Bergeron v. Pan American Assurance Co.,* 1997 WL 543099, No. 97–1637 Slip. op. (W.D.La. Sept. 3, 1997), the court "look[ed] only at the named Plaintiffs in assessing whether [it] has jurisdiction" and held that "since ... the named Plaintiffs' policies [were] not subject to ERISA," the state law claims were not preempted. *Id.* at *2. Therefore, the court remanded the case to state court. *Id.* Because there is likewise no allegation in this case that the named plaintiffs' policies relate to an ERISA plan, ERISA preemption does not apply.

### III. Conclusion

Defendants have failed to persuade the Court that the claims against the diverse defendants were fraudulently joined or fraudulently misjoined to defeat diversity jurisdiction. Furthermore, there is no federal question jurisdiction under ERISA over any of the claims asserted in the underlying complaint. Therefore, it is **ORDERED** that plaintiffs' motion to remand be and hereby is **GRANTED.** This action is hereby **REMANDED** to the Circuit Court of Clarke County, Alabama.