Richard H. JONES, et al., Plaintiffs,

v.

WOODMEN ACCIDENT & LIFE
CO., et al., Defendants.

No. 3:99CV7654.

United States District Court,
N.D. Ohio,
Western Division.

Aug. 3, 2000.

Daniel J. Brady, Sandusky, OH, Paula J. Chmura, Murray & Murray, Sandusky, OH, John Timothy Murray, Sr., Murray & Murray, Sandusky, OH, John Timothy Murray, Sr. Murray & Murray, Sandusky, OH, for Plaintiffs.

Derek M. Meisner, Jorden, Burt, Boros, Cicchetti, Berenson & Johnson, Washington, DC, Waldemar J. Pflepsen, Jr., Jorden, Burt, Boros, Cicchetti, Berenson & Johnson, Washington, DC, Kevin A. Pituch, Doyle, Lewis & Warner, Toledo, OH, Philip E. Stano, Jorden, Burt, Boros, Cicchetti, Berenson & Johnson, Washington, DC, Steven Timonere, Doyle, Lewis & Warner, Toledo, OH, for defendants.

## ORDER

CARR, District Judge.

This is a class action case in which plaintiffs, holders of insurance policies issued by Woodmen Accident & Life Co. (Woodmen), allege that they were fraudulently induced by Woodmen and certain of its agents to replace their policies with inferior (and more expensive) insurance products. Plaintiffs originally filed their complaint in state court. Defendants then removed it to federal court.

Pending are plaintiffs' motions for remand (Doc. 9) and for leave to file an amended complaint. (Doc. 28). For the following reasons, the motions shall be granted.

## BACKGROUND

Richard and Janet Jones are Ohio residents who purchased whole life insurance from Woodmen, a Nebraska corporation. During the term of their policies, a Woodmen sales agent, Steven Allbaugh, persuaded the Joneses to switch from whole life to universal life coverage.

Plaintiffs allege that universal life coverage is an inferior insurance product. According to plaintiffs, this inferiority was concealed from the Joneses to promote replacement and thus deplete the cash value of their replaced policies and churn commissions. Based on these and other allegations, plaintiffs seek damages for 1) fraudulent concealment, 2) fraudulent inducement, 3) breach of fiduciary duty, 4) breach of the duty of good faith and fair dealing, 5) negligence, 6) negligent misrepresentation, 7) reformation, and 8) unlawful aiding and abetting.

The Joneses, on behalf of themselves and a nationwide class of plaintiffs similarly situated, sued Woodmen and Brent Gilmore (defendants) in the Court of Common Pleas in Erie County, Ohio. Mr. Gilmore, a citizen of Ohio, is an employee of Woodmen, whom plaintiffs allege had some involvement in the replacement of whole life policies with universal life coverage.

Defendants removed the case to federal court, alleging that Mr. Gilmore, whose presence as a defendant undermines diversity jurisdiction, was fraudulently joined. Plaintiffs now seek remand and leave to amend to add Cletus Kotten, another Woodmen employee, as a defendant.

## REMOVAL

Removal is governed by 28 U.S.C. § 1441, *et seq.* The Supreme Court has admonished lower courts to read § 1441 narrowly with "[d]ue regard for the rightful independence of state governments...." *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). *See also Long v. Bando Manufacturing of America, Inc.,* 201 F.3d 754, 757 (6th Cir.2000) ("[R]emoval statutes are to be narrowly construed."); *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1252 (6th Cir.1996) ("The Constitution allows federal

courts only a limited and special jurisdiction, and powers not given to the federal courts by Congress are reserved to the primary repositories of American judicial power: state courts."). Only state-court actions that could have been filed in federal court originally may be removed to federal court by the defendant. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Absent diversity of citizenship, federal-question jurisdiction is required. *Id.*

Diversity of citizenship exists under 28 U.S.C. § 1332 only when no plaintiff and no defendant are citizens of the same state, *United States Fidelity & Guar. Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1089 (6th Cir.1992), and the amount in controversy exceeds $75,000.

 The party seeking removal bears the burden of establishing its right thereto. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit,* 874 F.2d 332, 339 (6th Cir.1989) (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97–98, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). *See also Certain Interested Underwriters at Lloyd's London, England v. Layne,* 26 F.3d 39, 41 (6th Cir.1994) (holding that the party seeking to remove a case bears the burden of showing diversity). All doubts are to be resolved against removal. *Wilson v. USDA,* 584 F.2d 137, 142 (6th Cir. 1978).

## DISCUSSION

Defendants argue that complete diversity existed at the time of removal, notwithstanding Mr. Gilmore's presence as a party, because Mr. Gilmore, an Ohio citizen, was joined to this action fraudulently for the purpose of destroying § 1332 jurisdiction. Further, defendants argue that I should preclude plaintiffs from amending their complaint to add Mr. Kotten as a party because his joinder too would be fraudulent.

 "When a non-diverse party has been joined as a defendant, ... the remov-

ing party may avoid remand only be demonstrating that the non-diverse party was fraudulently joined." *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir.1999) (quoting *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3d Cir. 1992)). Under the doctrine of fraudulent joinder, the inquiry is whether there is at least a colorable claim against the non-diverse party in state court. *Alexander v. Electronic Data Sys. Corp.,* 13 F.3d 940, 949 (6th Cir.1994). In other words, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id.* (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski,* 391 F.2d 172, 176 (5th Cir.1968)). "[I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants," the action must be remanded to state court. *Coyne v. American Tobacco Co.,* 183 F.3d 488, 493 (6th Cir.1999).

### A. Brent Gilmore

 Plaintiffs argue that they have legitimate claims against Mr. Gilmore under Ohio law. According to plaintiffs, Mr. Gilmore participated in Woodmen's scheme to induce named plaintiffs into replacing their insurance policies. Further, plaintiffs claim that Mr. Gilmore is a licensed managing general agent, subject to the regulatory requirements set forth in O.R.C. § 3905.71, *et seq.,* and that he violated those requirements in his employment by Woodmen. Neither of these contentions has merit.

First, it is apparent that Mr. Gilmore did not encourage the Joneses to replace their policies. At the time Mr. Jones surrendered his whole life policy to purchase universal life coverage, it is undisputed that Mr. Gilmore was not working for Woodmen. In his affidavit, Mr. Gilmore attested that he was "not employed by Woodmen in any capacity prior to March 1, 1994." (Gilmore Aff. at ¶ 1). Plaintiffs acknowledge in their complaint that Mr. Jones switched his policy on August 5,

1986, nearly eight years before Mr. Gilmore joined Woodmen. (Compl. at ¶¶ 36–37). Therefore, Mr. Gilmore could not have "actively concealed the true nature of the replacement transaction from Mr. Jones" as plaintiffs allege. (*Id.* at ¶ 39).

Regarding Mrs. Jones, she initially changed to universal life coverage on August 12, 1988. (*Id.* at ¶¶ 46–47). This was long before Woodmen hired Mr. Gilmore, and thus Mr. Gilmore could not have influenced Mrs. Jones in her decision.

Mrs. Jones, however, replaced her policy again on October 17, 1995. (*Id.* at ¶ 51). By 1995, Mr. Gilmore was with Woodmen, working as a field supervisor in Woodmen's Lincoln, Nebraska home office. (Gilmore Aff. at ¶ 1). But according to Mr. Gilmore, he had "absolutely no involvement with plaintiffs ... with regard to the marketing, solicitation, sale, servicing or any other aspect of any of the insurance contracts" issued to them. (*Id.* at ¶ 5). Further, Mr. Gilmore does not recollect "ever having personally communicated with the plaintiffs ..., either orally or in writing, at any time," and he has "no knowledge concerning any aspect of plaintiffs' policies." (*Id.* at ¶ 6). Mr. Gilmore never "billed, collected or received any premium payments from the plaintiffs," and he "never issued any premium statements to the plaintiffs, handled or supervised any claims brought by the plaintiffs, or had any other involvement with the plaintiffs or their insurance contracts of any sort at any time." (*Id.* at 7). In short, Mr. Gilmore swears that he had nothing to do with the replacement of Mrs. Jones's policy on October 17, 1995. Plaintiffs do not challenge this evidence.

Given the uncontroverted proof that Mr. Gilmore did not induce, either directly or indirectly, Mrs. Jones to replace her policy on October 17, 1995, no claims arising out of that transaction can be brought against Mr. Gilmore.

Second, the evidence shows that Mr. Gilmore did not act as a licensed managing general agent for purposes of O.R.C.

§ 3905.71, *et seq.* (*Id.* at ¶ 4; Rickers Aff. at ¶ 4). Rather, Mr. Gilmore's duties, beginning on July 1, 1998, were those of a mentoring general agent. (Gilmore Aff. at ¶ 1). As a mentoring general agent, Mr. Gilmore lacked underwriting authority (*id.* at ¶ 4; Rickers Aff. at ¶ 6), which, by statutory definition, prohibited him from holding himself out as a licensed managing general agent. *See* O.R.C. § 3905.71(D)(1)(c)(i). Further, he never sold policies whose total premium value exceed five percent of all premiums collected by Woodmen, a predicate to qualification as a licensed managing general agent under the statute. *Id.* Accordingly, Mr. Gilmore was not subject to O.R.C. § 3905.71, *et seq.*

Plaintiffs alternatively argue that Mr. Gilmore had post-sale servicing responsibility for named plaintiffs' replacement insurance, giving rise to Mr. Gilmore's liability for Woodmen's marketing and sales practices, even those with which he was not involved. To support this contention, plaintiffs cite one case, *Atchison v. Woodmen of the World Ins. Soc.,* 982 F.Supp. 835 (S.D.Ala.1997). I find *Atchison* to be distinguishable.

In *Atchison,* a class of insureds sued their insurer in state court alleging they were fraudulently induced to buy insurance policies based on deceitful marketing and sales tactics. The named plaintiffs were citizens of Alabama. Though the primary defendant was an out-of-state insurance company, the plaintiffs also sued certain of the insurer's agents who lived and worked in Alabama.

The defendants then removed the case to federal court, claiming that the agents had been fraudulently joined. In response, the plaintiffs sought remand, arguing that they had legitimate claims against the agents because they actually sold the policies at issue.

Agreeing with the plaintiffs, the district court ordered remand. In the district court's view, there was little dispute that

there could be recovery against the agents as the agents were involved in marketing and sales. Marketing and sales were at the heart of the plaintiffs' allegations. Indeed, even the defendants acknowledged "that some plaintiffs, notably the *named* plaintiffs, do have a possibility of recovery against the nondiverse [agent] defendants...." *Id.* at 838 (emphasis original). Given this claim viability, remand was deemed appropriate.

Here, however, Mr. Gilmore did not market or sell policies to named plaintiffs. Further, Mr. Gilmore denies that he ever serviced their policies. And even if he had, post-sale servicing, without more, cannot establish a claim of fraud occurring at or before the point of sale, which is what is at issue in this case.

In sum, there is no colorable basis to conclude that Mr. Gilmore may be liable to plaintiffs under any theory of Ohio law. His joinder, therefore, is fraudulent, and he shall be dismissed as a party to this litigation.

### B. Cletus Kotten

Mr. Kotten, a long-time resident of Findlay, Ohio, originally was not a defendant in this case. In the course of a deposition taken on March 8, 2000, however, plaintiffs learned that Mr. Kotten supervised the sales agent, Mr. Allbaugh, who convinced the Joneses to switch their policies. Further, Mr. Kotten testified that he had not less than a dozen conversations with Mr. Allbaugh regarding the issue of policy replacement, in which he told Mr. Allbaugh that clients should not be urged to replace their policies unless it was in their best interest. (Kotten Dep. at 66). Apparently, both Mr. Kotten and Woodmen's home office were "on [Mr. Allbaugh's] case a lot" about his replacement practices. (*Id.* at 65). Eventually, these practices led to Mr. Allbaugh's termination. (*Id.*).

On March 27th, approximately three weeks after Mr. Kotten's deposition, plaintiffs moved to amend their complaint so as to add Mr. Kotten as a party. Defendants oppose such an amendment, arguing that it would be fraudulent.

■ "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Whether a party should be joined under § 1447(e) turns not on the indispensability of the party whose joinder is sought, but rather on the fairness in allowing joinder after removal. *Municipal Employees Retirement Sys. v. Federal Ins. Co.*, 1999 WL 1005643, *2 (W.D.Mich. Aug.17, 1999).

■ Courts have articulated several facts bearing on such fairness, including 1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, 2) whether plaintiff has been dilatory in asking for amendment, 3) whether plaintiff will be significantly injured if amendment is not allowed, and 4) other equitable considerations. *Id.* (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987)). *See also Wells v. Certainteed Corp.*, 950 F.Supp. 200, 201 (E.D.Mich. 1997) (observing that the original defendant's interest in the choice of forum should be given some weight). Ultimately, however, district courts have discretion to deny or grant a motion to amend that would add a non-diverse party. *Wells*, 950 F.Supp. at 201.

■ Here, the balance of equities favors the amendment desired by plaintiffs. First, plaintiffs have a colorable claim against Mr. Kotten, who supervised Mr. Allbaugh and allegedly knew that he was engaged in suspect replacement practices. Second, plaintiffs were not dilatory in seeking amendment. The amendment at issue was filed less than three weeks after Mr. Kotten's deposition, which I permitted specifically so that the parties could discover information that might be relevant to removal. Third, at this early stage of the litigation, defendants have invested lit-

tle time, energy and resources in federal court, meaning that if the case were remanded to state court the resultant delay and waste would be negligible. Fourth and finally, plaintiffs would suffer some injury if denied the opportunity to pursue claims against a viable defendant.

Defendants counter that plaintiffs' claims against Mr. Kotten are not serious. As evidence that his presence in the case is no more than a ploy to destroy diversity jurisdiction, defendants observe, correctly, that plaintiffs have not asked for damages against Mr. Kotten in their prayer for relief.

Plaintiffs, however, represent that the absence of a prayer for damages is a typographical error, one which they seek leave to correct. I am persuaded by this explanation. It is not credible to think that the omission of a damage claim against Mr. Kotten constitutes some ill-conceived procedural maneuver. Thus, I shall grant plaintiffs leave to amend their complaint. With Mr. Kotten's joinder as a party—and with an added damage claim against him—complete diversity of citizenship no longer exists, and this case shall be remanded to state court.

### CONCLUSION

It is, therefore,

ORDERED THAT plaintiffs' motions for remand and for leave to file an amended complaint are granted.

So ordered.